**Harry HOFFER et al., Plaintiffs,**

v.

**MARINE MIDLAND TRUST COMPANY OF NEW YORK et al., Defendants.**

**No. 68 Civ. 4000.**

United States District Court
S. D. New York.

Dec. 11, 1968.

Levin & Weintraub, New York City, for plaintiffs.

Sullivan & Cromwell, New York City, for defendant Marine Midland Grace Trust Co. of New York.

MANSFIELD, District Judge.

The Trustees in bankruptcy of the Premier Steamship Corporation ("Premier") brought this action against Marine Midland Trust Company ("Midland") and other defendants not involved in these motions, *inter alia*, to set aside as a voidable preference or a fraudulent transfer the payment of $150,000 by Premier to Midland on October 11, 1966. Recovery against Midland is sought in the complaint under § 60(a) and (b) and § 67(d) (3) of the Bankruptcy Act. Both Midland and plaintiffs have moved for summary judgment on the basis of the pleadings, exhibits and affidavits pursuant to Rule 56, F.R.Civ.P. Plaintiffs appear to have abandoned their § 67(d) (3) claim against Midland; that section is directed against a person who furnishes consideration used by the bankrupt to make a preferential transfer and would, therefore, be inapplicable against Midland, the alleged recipient of a preference in this case. The sole question briefed and argued was whether plaintiffs are entitled to recovery under § 60(a) and (b), which deals with preferential transfers.

The essential facts are not in dispute. On February 3, 1966 Midland loaned Premier $150,000 on a demand note; the loan was personally guaranteed by Harry Sperling, Premier's president. Although the understanding was that this was to be a short term loan, it had not been repaid by October 5, 1966. During the interim Midland pressed both Premier and Sperling for payment. On October 5th an agreement was reached between the parties to the effect that Midland would loan $150,000 to Sperling for the purpose of enabling Premier to pay its debt to Midland. The purpose was to substitute Sperling for Midland as Premier's creditor. The

agreement was executed on October 11th. On that date Sperling borrowed the $150,000 and deposited it in Premier's checking account; Premier simultaneously drew its check for the same amount payable to Midland, which was thereupon credited aaginst the February, 1966 loan. All of this was accomplished through simultaneous bookkeeping entries without any of the funds leaving Midland's possession. On October 19, 1966 Premier filed a voluntary petition in bankruptcy.

A preference is defined in § 60(a) of the Bankruptcy Act as follows:

"A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

Under § 60(b) of the Act, a preference may be avoided and recovered by the trustee if it can be proven that the creditor receiving it had reasonable cause to believe that the debtor was insolvent at the time of the transfer.

Although the transaction here was a transfer on account of an antecedent debt incurred by the debtor within four months before the filing of the petition, it would constitute a voidable preference only if it enabled Midland to receive a greater portion of its debt than other creditors of the same class. For this requirement to be fulfilled, it is not sufficient that the allegedly preferred creditor has been benefited in some manner by the transfer; there must be a diminution of the assets of the bankrupt available to other creditors of the same class. Continental & Comm'l Trust & Savings Bank v. Chicago Title & Trust Co., 229 U.S. 435, 444, 33 S.Ct. 829, 57 L.Ed. 1268 (1913); Ri-

cotta v. Burns Coal & Building Supply Co., 264 F.2d 749 (2d Cir.1959).

■ Plaintiffs assert that there was a diminution of the estate in this case on two alternative grounds. First they argue that the money advanced from Sperling was not encumbered in any manner, that it became part of the general assets of Premier, and that, therefore, the transfer to Midland resulted in a depletion of the general assets of the insolvent corporation. Reliance is placed upon the case of Smyth v. Kaufman, 114 F.2d 40, 130 A.L.R. 951 (2d Cir.1940), in which a preference was found where the landlord of the bankrupt lent it money which it used to pay an antecedent debt on two occasions; on the second of those occasions the money was never actually given to the bankrupt but went from the landlord directly to the creditor. The court stated that there was no indication in the record that the money was lent on either occasion on the express condition that the particular creditor be paid; even as to the second payment the court found that "the only interest Childs had in lending money to Koplik was to keep the latter in business so that its lease would continue and its rent would be paid." 114 F.2d at 42. It did not matter that the landlord knew which creditor would be paid; since the bankrupt could change the designation of the creditor to be paid and there was nothing indicating that the loan was conditioned on its being applied to this particular creditor, the loans were considered to be general and the payments to creditors preferential. In this vital respect the situation differed from that in Grubb v. General Contract Corp., 94 F. 2d 70 (2d Cir.1938), where loans so conditioned barred the proceeds from becoming part of the bankrupt's estate. Similarly the facts in the instant case indicate that Premier had no such control over the proceeds of the loan. The money advanced by Sperling was furnished by Midland for the sole purpose of eliminating Premier's outstanding indebtedness to Midland. It is clear from the undisputed facts in this case, in particular the agreement reached on October 5, 1966, that neither Sperling nor Premier would ever have received this money if it had not been agreed that it would turn it over immediately to Midland.

■ The effect of the transaction here was precisely the same as if Sperling, the guarantor of Premier's demand note to Midland, had taken up that note, as he was obligated to do in the event of a default, and thereby become subrogated to Midland's rights against Premier. It is an established general principle that the assumption of a note's obligations by a surety or guarantor of the bankrupt does not create a preference. National Bank of Newport v. National Herkimer County Bank of Little Falls, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042 (1912). Plaintiffs argue strenuously that the *Herkimer Bank* holding is not to be mechanically applied, and that the determination of a preference must be made on the basis of the unique factual circumstances of the case. In support of this proposition the case of Aulick v. Largent, 295 F.2d 41 (4th Cir.1961) is cited. In *Aulick*, however, a third party's endorsement of the bankrupt's note was procured by delivery of security owned by the bankrupt to that third party within four months before the filing of the petition; delivery of the endorsed note to a creditor there resulted in a preference. In that case the third party was not a pre-existing guarantor and, since the bankrupt delivered security to procure the endorsement, there was a diminution of the bankrupt's estate; those facts are not present in the instant case, and, unless there is some other basis for departing from the general principle of the *Herkimer Bank* decision, no preference can be found here.

■ Plaintiffs argue that a diminution of the bankrupt's estate should be found here on a second basis. Sperling, who was president of Premier, had a running account with Premier under which he was on October 11, 1966, the date of the $150,000 advance and payment to Midland, in debt to Premier in

the amount of $56,000. By the date of the filing of the petition, if it had not been for the $150,000 debt incurred on October 11th, the balance due would have been $20,590. It is therefore claimed that the transaction attacked by the Trustees here resulted in the loss of a claim that Premier would have had against Sperling. Although at oral argument the amount of the loss was asserted to be $56,000, it would appear that the actual relevant figure is the $20,590 balance remaining in the account when the petition was filed. It is unclear, however, whether Sperling would be permitted to utilize the $150,-000 advance as a counterclaim to eliminate the debt owed by him to Premier. If it can be established that Sperling acquired the counterclaim with knowledge or notice that the bankrupt was insolvent and with a view toward using it to extinguish his debt to Premier, the counterclaim cannot be allowed. Bankruptcy Act § 68(b). Whether or not the counterclaim is to be allowed, however, presents a controversy solely between the Trustees and Sperling; that dispute is entirely distinct from the question of the existence of a preference in favor of Midland. The possibility of a set off or counterclaim is not, therefore, relevant in determining the preference issue before us, at least where, as here, there is no contention that Midland entered into this transaction in order to afford Sperling the counterclaim or that Midland knew of Sperling's account with Premier. National Bank of Newport v. National Herkimer County Bank of Little Falls, 225 U.S. 178, 185–187, 32 S.Ct. 633 (1912). The depletion, if any, of the bankrupt's estate here would result not from the transfer attacked as a preference but from the creation of a counterclaim which may be the subject of a separate and distinct controversy not involving defendant Midland.

Since it appears on the basis of undisputed facts that the allegedly preferential transfer did not deplete the estate of the bankrupt available to other credi-tors, defendant's motion for summary judgment is granted. Plaintiffs' cross motion is denied.

So ordered.