In re F & S CENTRAL
MANUFACTURING
CORP., Debtor.

Marianne DeROSA, Trustee of the
Estate of F & S Manufacturing
Corp., Plaintiff,

v.

BUILDEX INCORPORATED and
Instrument Systems Corp.,
Defendants.

Bankruptcy No. 882–82533–18.
Adv. P. No. 884–0322–18.

United States Bankruptcy Court,
E.D. New York.

Oct. 16, 1985.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., for trustee.

Anderson Russell Kill & Olick, P.C., New York City, for Buildex Inc.

Marianne DeRosa, Mineola, N.Y., trustee.

## DECISION & ORDER

C. ALBERT PARENTE, Bankruptcy Judge.

On December 10, 1984, the trustee commenced an action to avoid an alleged preferential transfer made by F & S Central Manufacturing Corp. (the "debtor") to Buildex Incorporated (the defendant). The defendant and the trustee each subsequently moved for summary judgment. A hearing on their motions was held on May 9, 1985. From the parties' papers and the hearing, the following facts have been adduced.

## FACTS

The debtor, a corporation, was a wholly owned subsidiary of the defendant until June, 1982 when the defendant sold the debtor to the Brunswick Group, Inc. ("Brunswick" or "Buyer"). At the time of sale, the debtor's books reflected that the debtor owed the defendant $3.249 million.[1]

The terms of sale were contained in several documents, including a Stock Purchase Agreement ("SPA"), a Subordinated Note (the "Subordination Agreement"), and a Loan and Security Agreement. The Stock Purchase Agreement provided that Brunswick would pay the defendant $1,000 to purchase the defendant's stock. (SPA Paragraph (1)(B).) In addition, Brunswick, in some unspecified way, would "cause to be made available" to the debtor $1.499 million, which sum the debtor would use to reduce the debt it owed the defendant. The debtor was to pay the balance of the debt ($1.75 million), in 22 periodic installments, with the defendant's right to receive these payments subordinated, under limited circumstances, to the rights of certain of the debtor's creditors. (SPA Paragraph (1)(C).)

The defendant and Brunswick executed the Stock Purchase Agreement on June 4, 1982, at which time the defendant delivered its stock in the debtor to Brunswick. On this same date, the debtor entered into an Agreement (the "Loan and Security Agreement") with Marine Midland Bank ("Marine Midland" or "Bank") in which the debtor borrowed $1.499 million. To obtain the loan, the debtor granted Marine Midland a security interest in all the debtor's physical and intangible assets, and agreed to use the loan proceeds to reduce its debt to the defendant. Brunswick guaranteed the loan.

Although the Stock Purchase Agreement expressly provided that the debtor was to transfer the $1.499 million to the defendant at or before the time the defendant delivered its stock to Brunswick (SPA Paragraph (13)(E)), the defendant avers that the debtor's transfer of the funds did not actually take place until three days later, on June 7, 1982. As proof of the date of transfer, the defendant has submitted a copy of a statement issued by the defendant's bank showing that the funds were received on June 7, 1982. The defendant has submitted no evidence indicating when the funds were actually transferred. The trustee disputes that there was a delay between the date the defendant divested itself of legal title to the stock and the date the debtor transferred the funds.

Four months after the sale, on October 6, 1982, the debtor filed for relief under Chapter 11 of the Bankruptcy Reform Act (the "Code"). On March 11, 1983, the debtor was removed as debtor-in-possession and Marianne DeRosa appointed trustee. On December 10, 1984, Ms. DeRosa commenced the within adversary proceeding to avoid as a preference the debtor's transfer of the $1.499 million.

## DISCUSSION

A motion for summary judgment is governed by Bankruptcy Rule 7056 which incorporates the summary judgment rule of the Federal Rules of Civil Procedure ("Rule 56"). The purpose of the motion is to dispose of issues which can be decided upon admitted or established facts without a trial. C. Wright, A. Miller, M. Kane, 10A

---

**1.** No information concerning the basis for the debt or the terms of its repayment has been submitted.

Federal Practice & Procedure Civ.2d § 2712 (1983). Issues which cannot be so decided must be reserved for trial. *Id.*

Regardless of which party bears the burden of proof on an issue at trial, the burden in a motion for summary judgment is on the movant. *In re T.I. Swartz Clothiers, Inc.*, 15 B.R. 590, 592; 8 B.C.D. 681 (Bankr. E.D.Va.1981). This burden is a stringent one:

> Before summary judgment will be granted it must be clear what the truth is and any doubt as to the existence of a genuine issue of material fact will be resolved against the movant.

C. Wright, A. Miller, M. Kane, 10A Federal Practice & Procedure § 2727. The adverse party has no duty to present evidence opposing the motion unless the movant's evidence would entitle the movant to a directed verdict at trial if uncontroverted. As stated by one authority:

> Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposition evidentiary matter is presented.

*Id.*

■ Section 547(b) of the Bankruptcy Reform Act (the "Code") empowers the trustee to avoid certain "preferential" transfers of the debtor's property made before the debtor filed for bankruptcy relief. The provision was enacted to promote the Code's policy of preserving a financially distressed debtor's estate so that the debtor's assets may be fairly distributed amongst all creditors, not merely those who are favored. *See, e.g., Palmer v. Radio Corp. of America*, 453 F.2d 1133, 1136 (5th Cir.1971); *In re Bennett*, 35 B.R. 357, 360 (Bankr.Ill.1984); *In re Davis*, 22 B.R. 644 (Bankr.Ga.1982).

■ In order to avoid a pre-bankruptcy transfer, the trustee must prove: (1) that the transfer was a transfer of the debtor's interest in property; (2) to or for the benefit of a creditor; (3) on account of the debtor's antecedent debt; (4) made during the 90 day period preceding the debtor's filing for bankruptcy relief, or if the creditor is an "insider," made within the year preceding the filing at a time when the creditor had reasonable cause to believe that the debtor was insolvent; (5) made at a time when the debtor was insolvent; and (6) enabled the creditor to receive more than it would receive in a Chapter 7 distribution. Several exceptions to the trustee's avoiding powers are contained in § 547(c). These exceptions are affirmative defenses which must be pleaded and at trial proven by the creditor transferee. *See, e.g., In re Saco Local Development Corp.*, 30 B.R. 867, 868 (Bankr.D.Me.1983).

The trustee seeks summary judgment on the following issues: (1) the transfer was a transfer of the debtor's interest in property; (2) the transfer was a transfer on account of the debtor's antecedent debt; (3) and the creditor was an "insider" at the time of transfer.

The defendant challenges the trustee's action and seeks summary judgment on the following grounds: (1) that no property of the debtor was transferred; (2) that the payment was not on account of an antecedent debt; (3) that the transfer took place more than 90 days before the petition was filed, at a time when the defendant was not an insider; (4) that the debtor was not insolvent at the time of the transfer; and/or (5) that the transaction is exempt under § 547(c)(1) which provides that a transfer which the debtor and creditor intended to be a contemporaneous exchange for new value, and which was in fact "substantially contemporaneous," is not subject to the trustee's avoiding powers. The defendant does not dispute that it was a creditor of the debtor, or that the transfer enabled it to receive more than it would receive in a Chapter 7 case distribution.

## TRANSFER OF THE DEBTOR'S INTEREST IN PROPERTY

The trustee and the defendant dispute whether the transfer of the $1.499 million was a transfer of the debtor's interest in property. The defendant argues that since the Marine Midland loan to the debtor was

conditioned upon the debtor's using the loan proceeds to repay the defendant, the loan proceeds were "earmarked funds" which never became part of the debtor's estate, and hence no property of the debtor was transferred. To support its position, the defendant relies principally on the following quotation from Collier's:

In cases when a third person makes a loan to a debtor specifically to enable him to satisfy the claim of a designated creditor, the proceeds never become part of the debtor's assets, and therefore no preference is created. The rule is the same regardless of whether the proceeds of the loan are transferred directly by the lender to the creditor or are paid to the debtor with the understanding that they will be paid to the creditor in satisfaction of his claim, so long as such proceeds are clearly 'earmarked.'

4 *Collier on Bankruptcy*, 15th ed., § 547.-25. In addition to Collier's, the defendant also cites numerous other cases which purportedly support the rule of law as articulated by Collier's. *Grubb v. General Contract Purchase Corp.*, 94 F.2d 70 (2d Cir. 1938); *In re M.J. Sales & Distributing Co., Inc.*, 25 B.R. 608, 612 (Bankr.S.D.N.Y. 1982); *In re Price Chopper*, 40 B.R. 816 (Bankr.S.D.Cal.1984); *In re Villars*, 35 B.R. 868 (Bankr.S.D.Ohio 1983).

The defendant is incorrect. Collier's statement of the case law, focusing as it does on the form of a debtor's transaction, and not effect, is misleading and the defendant's reliance upon it misplaced. *In re Villars*, 35 B.R. at 872; *accord, Steel Structures, Inc. v. Star Manufacturing Co.*, 466 F.2d 207, 217 (6th Cir.1972).

■ A judicially developed exception to the preference statute holds that a transfer by the debtor which does not diminish the debtor's assets is not a preference. *National Bank of Newport v. National Herkimer County Bank*, 225 U.S. 178, 184, 32 S.Ct. 633, 635, 56 L.Ed. 1042 (1912); *Grubb v. General Contract Purchase Corp.*, 94 F.2d at 72; *Nicholson v. First Investment Co.*, 705 F.2d 410, 413 (11th Cir.1983); *Hoffer v. Marine Midland*

*Trust Co. of New York*, 294 F.Supp. 187, 188 (S.D.N.Y.1968). As a rule, a debtor's transfer of earmarked loan proceeds does not diminish the debtor's assets and therefore the transfer cannot be avoided. *Steel Structures, Inc. v. Star Manufacturing Co.*, 466 F.2d at 219; *Virginia National Bank v. Woodson*, 329 F.2d 836, 839 (4th Cir.1964); *Hoffer v. Marine Midland Trust Co. of New York*, 294 F.Supp. at 189. But where a debtor surrenders or encumbers its property in order to obtain a loan, the transfer does diminish the debtor's assets and the transaction is not exempt. *Id.* The trustee may recover an amount equal to the value of the assets surrendered or encumbered. *Steel Structures, Inc. v. Star Manufacturing Co.*, 466 F.2d at 219; *Virginia National Bank v. Woodson*, 329 F.2d at 839.

■ In the instant case, it is undisputed that in order to obtain the loan from Marine Midland the debtor gave the Bank a security interest in all its assets. Accordingly, the court finds that the transfer to the defendant was a transfer of the debtor's interest in property equal to the value of the assets used to secure the loan. The court reserves for trial the determination of the value of these assets.

### Antecedent Debt

■ The defendant asserts that the debtor's transfer of the $1.499 million was not a transfer on account of the debtor's antecedent debt as required by § 547(b). However, under the terms of the Stock Purchase Agreement and the Loan and Security Agreement the debtor was obligated to use the loan proceeds to reduce its debt to the defendant. A debtor's payment of a pre-existing debt is plainly a payment on account of an antecedent debt. *In re Independent Clearing House Co.*, 41 B.R. 985, 1011 (Bankr.D.Wash.1984).

### Insider

Section 547(b)(4) empowers a trustee to avoid a transfer of a debtor's interest in property made:

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer.[2]

The trustee and the defendant dispute whether the defendant was an "insider" at the time of the transfer. The defendant contends that because it delivered its stock in the debtor to Brunswick three days before the debtor's property was transferred, the defendant was not, as required by § 547(b)(4), an insider at the time of the transfer. The trustee disputes that there was a three day delay between the defendant's divestment of legal title to the stock and the debtor's transfer of the funds.

The court finds that the parties' dispute as to whether there was a delay between the defendant's transfer of title to the stock and the date the debtor transferred the funds is immaterial, for the defendant's argument rests on two incorrect propositions of law: 1) that only those who hold stock in a debtor are insiders; and 2) that only those who are insiders on the date the debtor transfers its property are insiders at the time of the transfer.

█ The insider provisions were enacted to protect general creditors from overreaching by those with power or special influence over the debtor. 2 Norton Bankruptcy Law & Practice § 32.29 (1981). Certain persons are insiders as a matter of law because of their formal relationship to the debtor. For example, affiliates (*i.e.*, those who hold 20% or more of a debtor's voting stock), officers, or directors of a corporate debtor are insiders by virtue of their status. Others are insiders because they "control" the debtor. The control such persons exercise need not be legal or absolute.

2 Norton § 32.30. A creditor who does not deal at arms length with the debtor, but who has a special relationship with the debtor through which it can compel payment of its debt, has sufficient control over the debtor to be deemed an insider. *See, e.g., In re Missionary Baptist Foundation of America Inc.*, 712 F.2d 206, 210 (5th Cir.1983); *In re Montanino*, 15 B.R. 307, 310 (D.N.J.1981); *In re Jefferson Mortgage Co., Inc.*, 25 B.R. 963, 968 (Bankr.D.N.J. 1982); *In re Belco, Inc.*, 38 B.R. 525, 11 B.C.D. 829, 831 (Bankr.W.D.Okla.1984).

█ The defendant herein had such a special relationship with the debtor on the day the funds were transferred. In accordance with the express terms of the Stock Purchase Agreement, the debtor's failure to make the transfer would have resulted in a rescission of the defendant's contract with Brunswick, and restored the defendant to full legal control of the debtor. The court finds that a creditor such as the defendant, who would reacquire full legal control of a debtor if the debtor failed to make a transfer, has the requisite control over the debtor to be an insider.

█ Moreover, assuming arguendo that only those who were affiliates of a debtor were insiders, the court would conclude that the defendant was an insider "at the time of transfer." The defendant assumes, without analysis or argument, that only those who are insiders on the very day the debtor transfers its property are insiders at the time of transfer. However, neither the literal language of the statute nor its legislative history require such a result. *Accord, In re Vaniman Intern., Inc.*, 22 B.R. 166, 189 (Bankr.E.D.N.Y.1982).

█ The longer period of preference vulnerability for insiders was enacted in part to assure that those who control the debtor could not use this control to frustrate the Code's preference policies by delaying the date the debtor files a bankrupt-

---

2. The 1984 amendments to the Code deleted the requirement that the trustee demonstrate that the creditor/insider had reasonable cause to believe that the debtor was insolvent at the time of transfer. However, the amendment was only effective as to cases filed on or after October 8, 1984 and thus does not apply to this proceeding.

cy petition. 2 Norton § 32.29. Section 547(b)(4) was not intended to allow those who are insiders to escape the insider provisions by delaying instead the date the debtor transfers its property. A creditor who is an insider at the time the transfer of the debtor's property is arranged is an insider at the time of the transfer. *In re Vaniman International, Inc.*, 22 B.R. at 189; *Hostellerie d'Argentevil, Inc.*, 42 B.R. 292, 293 (S.D.Fla.1984).

### INSOLVENCY

The defendant next asserts that the transfer cannot be set aside because the debtor was not insolvent at the time of the transfer. The defendant alleges that at the time of the transfer the debtor's assets (mainly inventory and receivables) were worth $7 million dollars and exceeded the debtor's liabilities by approximately $1.5 million. As evidence of the valuation of the debtor, the defendant has submitted a balance sheet, purportedly prepared on March 31, 1982 in accordance with "generally accepted accounting principles." The balance sheet contains no information concerning how the assets were valued.

Section 101(29) provides that a corporate debtor is insolvent if its debts exceed the "fair value" of its assets. Fair value is determined by estimating what the debtor's assets would realize if sold in a prudent manner in current market conditions. 2 Collier on Bankruptcy ¶ 101.26, p. 101–56 (15th ed. 1985). *Accord, In re Rubin*, 661 F.2d 979, 995 (2d Cir.1981). Asset values carried on a balance sheet, even if derived in accordance with "generally accepted accounting principles," do not necessarily reflect fair value: " 'Generally accepted accounting principles' are not synonymous with any specific [valuation] policy." *Pittsburgh Coke & Chemical Co. v. Bollo*, 560 F.2d 1089, 1092 (2d Cir.1977). Therefore, a balance sheet, such as that submitted by the defendant, which does not indicate how the debtor's assets were valued, has no probative weight at all. *In re Perdue Housing Industries, Inc.*, 437 F.Supp. 36, 38 (W.D.Okla.1977).

The defendant has offered no other evidence of its solvency and its motion thus rests on a bald denial that the debtor was insolvent at the time of transfer. Such a denial is insufficient to support the movant's burden: "The party moving for summary judgment cannot sustain his burden merely by denying the allegations in the opponent's pleadings." C. Wright, A. Miller, and M. Kane, Federal Practice & Procedure Civil 2d § 2727.

### NEW VALUE

Section 547(c) provides that a trustee cannot avoid a debtor's transfer of property to the extent that the debtor received a contemporaneous exchange of "new value." New value is defined at § 547(a)(2):

'[N]ew value' means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but *does not include an obligation substituted for an existing obligation.* (Emphasis added.)

The defendant contends that the subordination agreement gave the debtor "new value" in excess of the $1.499 million transferred by the debtor. The trustee argues that as a matter of law the subordination agreement cannot constitute new value for it is merely "an obligation substituted for an existing obligation." In rebuttal, the defendant states that the subordination agreement is not merely an obligation substituted for an existing obligation, but a "modification" of an existing obligation which can constitute new value. Neither the defendant nor the trustee have provided the court with any support for their differing interpretations of the provision.

The construction of a statute must start with its language. *U.S. v. American Trucking Assns.*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940); *Perry v. Commerce Loan Co.*, 383

U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827 (1966). Where the language is unclear, the court must ascertain the legislature's intent in drafting the statute. *Id.*

The court finds that the legislative history supports the defendant's construction of the statute. According to the House and Senate reports, the definition of new value was merely intended to codify the usual rules of consideration. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 372 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6328; S.R. No. 95–989, 95th Cong., 2d Sess. 87 (1978), U.S.Code Cong.Admin.News 1978, pp. 5787, 5873. As a rule, a promise to perform an existing obligation cannot constitute consideration. However, a modification in the terms of an existing obligation may constitute consideration. *See, e.g., In re Sepco,* 36 B.R. 279, 285 (Bankr. D.S.D.1984); *In re Arnold,* 190 F.Supp. 514, 516 (W.D.Va.1960).

■ Moreover, no statutory purpose is served by reading the statute as expansively as does the trustee. Section 547(c)(1) was enacted to exempt from the trustee's avoiding powers a creditor's transaction with a debtor which does not diminish the debtor's assets. 2 Norton's § 32.13. Thus, the statute provides that to the extent that a creditor, in exchange for receiving property from the debtor, gives to the debtor money or money's worth in new credit, goods, services or property, the transaction cannot be avoided. *In re Davis,* 22 B.R. at 646. To the extent that a creditor can demonstrate that its agreement to modify the terms of the debtor's obligation gave the debtor money or money's worth in new credit, goods, services, or property, there is no reason to avoid the transfer. 9A Am. Jur.2d § 551 (1980).

■ However, although a modification of an existing agreement may constitute new value, it does not necessarily do so. *In re Marketing Resources,* 41 B.R. 575, 579 (Bankr.E.D.Pa.1984); *In re Rustia,* 20 B.R. 131, 9 B.C.D. 6, 7 (Bankr.S.D.N.Y.1982). Whether a particular modification agreement gives a debtor new value is a question of fact. *In re Rustia,* 20 B.R. 131, 9 B.C.D.

at 7; *In re Duffy,* 3 B.R. 263, 6 B.C.D. 88 (Bankr.S.D.N.Y.1980). In this case the defendant has submitted no evidence that the subordination agreement gave the debtor new credit, goods, services or property. Consequently, the issue must be reserved for trial.

## CONCLUSION

In accordance with the above finding of undisputed facts and conclusions of law, the court denies the defendant's motion for summary judgment. The trustee's motion for partial summary judgment is granted on the following issues:

1. The transfer was a transfer to a creditor on account of the debtor's antecedent debt.

2. The transfer was a transfer of the debtor's property equal to the value of the assets the debtor encumbered to obtain the loan from Marine Midland.

3. The defendant was an insider at the time of the transfer.

The court reserves for trial the following issues:

1. The value of the assets securing the Marine Midland loan.

2. Whether the debtor was insolvent at the time of the transfer.

3. Whether the defendant had reasonable cause to believe that the debtor was insolvent at the time of the transfer.

4. Whether the transfer was a contemporaneous exchange for new value as defined by § 547(a)(2).

It is SO ORDERED.