**In the Matter of K & R MINING, INC., Debtor.**

**K & R MINING, INC., Plaintiff,**

v.

**KEFFLER CONSTRUCTION COMPANY, Defendant.**

**Bankruptcy No. 687–00790.**
**Adv. No. 687–0199.**

United States Bankruptcy Court,
N.D. Ohio.

June 1, 1988.

Craig Martahus and David L. Bialosky of Thompson, Hine & Flory, Cleveland, Ohio, for plaintiff.

Frederick S. Combs of Harrington, Huxley & Smith, Youngstown, Ohio, for defendant.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Presented are cross motions for summary judgment in the instant adversary proceeding. K & R Mining, Inc. (Mining) filed a two-count complaint in which it alleges that the transfer of certain coal mining leases to Keffler Construction Company (Keffler Construction), with a sublease back to Mining subject to royalty payments, is not a lease of nonresidential real property subject to 11 U.S.C. § 365(d)(3) but is in reality an installment payment of a previous debt. Alternatively, Mining asserts in Count II of its complaint and in a counterclaim [1] that the transfer of the coal mining leases and all subsequent royalty payments are avoidable as preferential pursuant to 11 U.S.C. § 547(b). Keffler Construction answered denying the essential allegations of the complaint.

Mining has filed its motion for summary judgment only as to the preference count, whereas Keffler Construction's motion for summary judgment is directed at both counts of the complaint and the counterclaim.

In light of the ruling herein as to whether the transfer of the coal leases constitutes an avoidable preference, the court will defer a ruling on Keffler Construction's motion for summary judgment as to Count I of the complaint.

## FACTS

Dwight A. Ensley (Ensley) and Warren E. Kelm (Kelm) in May or June, 1986 entered into negotiations for the possible purchase of Keffler and Rose Enterprises, Inc., now known as K & R Mining, Inc., and Keffler and Rose Coal Preparation Company, now known as K & R Processing, Inc. (Processing). The negotiations took place with David Keffler (Keffler) and Dean Rose (Rose), the owners of the outstanding stock of Mining and Processing, and resulted in the execution of a business purchase agreement. The business purchase agreement provided, inter alia, for the sale by Messrs. Keffler and Rose of their capital stock of Mining and Processing to E–K Industries, Inc. (E–K), a newly formed company owned by Ensley and Kelm.

The business purchase agreement also provided for the assignment to Keffler Construction of all of Mining's rights as lessee under certain coal leases in full satisfaction of a $3,327,200.00 pre-existing debt of Mining and an $801,035.00 pre-existing debt of Processing. Additionally, Keffler Construction would sublease all of the coal leases back to Mining at a royalty of fifty cents ($.50) per ton with a minimum annual royalty of $200,000.00 until a total of $4,000,000.00 had been paid at which time the royalty per ton would be reduced to twenty-five cents ($.25) per ton with no annual minimum payment.

Pursuant to the business purchase agreement, the outstanding stock of Mining and Processing was transferred to an escrow account on July 1, 1986, with E–K, Ensley, and Kelm delivering a promissory note in the amount of $40,000.00 payable on July 29, 1986 to Messrs. Keffler and Rose.

On July 29, 1986, the stock being held in escrow was conveyed to E–K. On July 31, 1986, Mining executed the Assignment of Coal Lease Interest and Contract Rights which evidenced the assignment of its interest in the coal leases to Keffler Con-

---

1. The within adversary proceeding has been consolidated with a removed state court action wherein Mining, being named as a defendant, has filed a counterclaim against Keffler Construction asserting the same cause of action as Count II of its complaint.

struction which in turn subleased the coal leases back to Mining.

Mining currently subleases virtually all of the real property, on which it conducts its coal mining operations, from Keffler Construction.

Prior to the implementation of the business purchase agreement, Mr. Keffler owned 50 percent of the stock of Mining and 85 percent of the stock of Keffler Construction.

Following the execution of the coal lease assignment, Keffler Construction canceled the existing indebtedness of Mining and Processing. Likewise, Mining and Processing deleted such indebtedness from their books.

The coal lease assignment was filed for record in Stark County on August 27, 1986 and in Columbiana County on September 29, 1986.

On May 26, 1987, Mining and Processing filed for relief under Chapter 11 of Title 11 of the United States Code. Thereafter, Mining filed the instant adversary proceeding.

## DISCUSSION

11 U.S.C. § 547 provides for the avoidance of certain pre-petition transfers of the debtor's property and provides in relevant part:

.    .    .    .    .

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

There is no dispute that Keffler Construction was, prior to the assignment, a creditor of Mining and the assignment was on account of an antecedent debt. Section 547(b)(1) and (2) *supra.*

### A.

The central issue in dispute is whether Section 547(b)(4)(B), *supra*, is applicable. The transfer having occurred between 90 days and one year before the petition date, there must be a showing that Keffler Construction was an insider at the time of such transfer.

Mining argues that the transfer occurred on July 1, 1986 when the business purchase agreement was executed or at the latest on July 29 and 31, 1986 when the stock and coal leases were transferred. Mining asserts that Keffler Construction was an insider at these times. Alternatively, Mining argues that if the transfer occurred when the coal assignment was recorded, then Keffler Construction was an insider at that time by virtue of the control it exerted over Mining.

Keffler Construction maintains that the coal leases, being an interest in real estate, were not transferred until they were recorded in August and September of 1986 and it was not an insider at this time based upon the fact that Mr. Keffler possessed no stock of Mining nor was he or Keffler Construction in control of the debtor.

■ 11 U.S.C. § 547(e)(2)(B) provides that a transfer will be deemed made when it is perfected. Under Ohio law, a lease to mine coal is an interest in real property. *Crawford and Murray v. Wick*, 18 Oh.St. 190 (1868); *Ross v. Short Creek Coal Company*, 117 Oh.St. 599, 159 N.E. 583 (1928).

The Code further provides in Section 547(e)(1)(A) that:

.    .    .    .    .

> a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee.

Under this provision, the date a transfer is perfected turns on state law. *See, Collier on Bankruptcy*, para. 547.16[2] (15th ed. 1987) (citations omitted).

■ Under Ohio law, until an interest in real property is recorded or filed for record in the office of the county recorder wherein the real property is located, the transfer is fraudulent so far as it relates to a subsequent bona fide purchaser. *See*, Ohio Rev. Code § 5301.25(A).

■ Accordingly, the coal leases were perfected and thus transferred when the assignment was recorded. *Accord, In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416 (9th Cir.1985).

Next for consideration is whether Keffler Construction was an insider when the assignment was recorded. 11 U.S.C. § 101(30) provides in relevant part:

"Insider" includes—

.    .    .    .    .

(B) if the debtor is a corporation—

.    .    .    .    .

(iii) person in control of the debtor;

.    .    .    .    .

(E) affiliate, or insider of an affiliate as if such affiliate were the debtor;

.    .    .    .    .

"Affiliate," in turn, is defined in Section 101(2)(B) as a:

"corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor ...".

"Entity" as defined also includes a person. 11 U.S.C. § 101(14).

■ Based upon the above definition of an affiliate, Keffler Construction was not an insider by virtue of Mr. Keffler's stock ownership when the coal leases were transferred. The perfection and thus the transfer of the coal leases occurred on August 27, 1986 and September 29, 1986. However, Mr. Keffler relinquished his stock in Mining, at the latest, on July 29, 1986.

Mining argues that Keffler Construction should not be permitted to circumvent the provisions of the Bankruptcy Code by engineering its exit out of Mining and by delaying the recording of the assignment. The assertion that the assignment was deliberately recorded late is not supported by the evidence. (*See*, Affidavit of John H. Brannen, Esq., former counsel to E–K, delay in filing caused by claim of title concerns). Furthermore, the clear language of Section 547(e) and Section 101(30) cannot be ignored.

■ However, Keffler Construction may yet be considered an insider if it can be shown that it exerted control over the debtor. Section 101(30)(B)(iii) *supra*. "The control such persons exercise need not be legal or absolute. A creditor who does not deal at arms length with the debtor, but who has a special relationship with the debtor through which it can compel payment of its debt, has sufficient control over the debtor to be deemed an insider." *In re F & S Central Manufacturing Corporation*, 53 B.R. 842, 848 (Bankr.E.D.N.Y. 1985) (citations omitted).

Mining asserts that Keffler was an insider by the control it held over it by virtue of possessing Mining's most important asset, the coal leases, and the fact that Mining leased a substantial portion of its equipment from Keffler Construction.

Keffler Construction disputes this assertion and states that there is no evidence of any compulsion or undue influence or that the transaction was not at arms length.

The court, from the limited evidence before it, cannot find as a matter of law that Keffler Construction was or was not in control of Mining when the transfer occurred. Accordingly, summary judgment is inappropriate, but the court will address the remaining issues presented so as to narrow the focus of any future hearing or proceeding.

### B.

As to whether Mining was insolvent at the time of the assignment, 11 U.S.C. § 547(b)(3), *supra,* Mining, pointing to its balance sheet dated June 30, 1986, asserts that its liabilities exceeded the value of its assets by $3,131,541.89 and therefore it was insolvent at the time of the transfer. Keffler Construction counters that Mining's balance sheet does not reflect fair valuation in that it does not carry a value for the coal leases; the debt owing to Keffler Construction, which was extinguished by the assignment, is still carried on the balance sheet; and Mining's assets are improperly valued at cost less depreciation which is not reflective of fair value.

■ First, in determining the proper assets to be included, property that has been transferred for the purpose of a preferential transfer is to be considered as an asset of the debtor in determining the solvency at the time of the preference. 2 *Collier on Bankruptcy,* para. 101.31 (15th ed. 1988) (citations omitted).

Mining asserts, through the affidavit of Dwight A. Ensley, that the market value of its coal leases is a function of the royalties generated by ongoing strip mining operations and absent the mining operations, such leases have no value. Therefore, they are not carried on the balance sheet.

Keffler Construction argues to the contrary that based upon Mining's assertion that the coal leases are its most important asset (*See,* Affidavit of Dwight A. Ensley, para. 7), they do have a market value. Also, Henry M. Schlueter, CPA, former accountant for Mining, states in his affidavit that "the failure to list the leases as an asset does not mean that said leases have no value, but merely that I had no informa-tion at that time to assign a value to them consistent with generally accepted accounting principles." (Affidavit, para. 3).

■ Based upon the evidence and affidavits before the court, the court cannot find, in the context of motions for summary judgment, that the coal leases have no value or, in the alternative, have value and accordingly ascertain that value.

As to the balance sheet including the debt owed to Keffler Construction, it is plain that if the property transferred is to be considered in determining the assets of the debtor, the debt that was to be extinguished by such transfer is also to be included in determining the debtor's liabilities. Accordingly, the inclusion of the debt owed to Keffler Construction is proper when determining the insolvency of Mining.

In regard to the valuation of the assets, 11 U.S.C. § 101(31) provides that a debtor is insolvent when "the sum of such entity's debts is greater than all of such entity's property at a fair valuation." Fair valuation is determined by estimating what the debtor's assets would realize if sold in a prudent manner in current market conditions. *In re F & S Central,* 53 B.R. at 849. "Asset values carried on a balance sheet, even if derived in accordance with 'generally accepted accounting principles,' do not necessarily reflect fair value." *Id.* at 849.

In the instant proceeding, the inventory and fixed assets of Mining listed on the balance sheet were valued at cost. Additionally, depreciation was taken against the fixed assets. (*See,* Affidavit of Henry Schlueter, CPA, para. 5). This is clearly not "fair valuation" as contemplated by the Bankruptcy Code and accordingly, the court cannot find from the evidence before it that Mining was insolvent when the transfer occurred.

### C.

Finally, as to whether Section 547(b)(5), *supra,* has been satisfied, a comparison must be drawn between what Keffler Construction actually received and what it would have received under the Chapter 7

distribution provisions of the Bankruptcy Code. Specifically, Mining must prove that Keffler Construction "received more than it would if the case were a Chapter 7 liquidation case, the transfer had not been made, and the creditor received payment of the debt to the extent provided by the provisions of the Code." 4 *Collier on Bankruptcy*, para. 547.08 (15th ed. 1987) (citations omitted).

Mining asserts that if the coal assignment had not been made and this were a case under Chapter 7, the total unsecured claims of Mining, which would include Keffler Construction's claim of $3,327,200.00, would be at least $7,179,791.00. Based upon its assets, Mining argues that after the payment of secured and priority claimants, unsecured creditors would receive "no more than $.087 for each dollar of claim and more probably, after inclusion of the administrative expenses of a Chapter 7 proceeding, would have received nothing." Inherent in Mining's analysis, as it was in its insolvency argument, is the belief that the coal leases that were assigned to Keffler Construction have no value absent the royalties generated by strip mining operations.

As the court previously concluded, *supra* p. 140, based upon the evidence before it and in the context of motions for summary judgment, the court can make no determination about the value, if any, of the coal leases. With such a finding, Mining's analysis as to what Keffler Construction would receive upon liquidation must fail.[2] Accordingly, summary judgment is inappropriate as to the requirement of Section 547(b)(5).

An order in accordance herewith shall issue.

---

2. The value of the coal leases must also be determined so as to determine what Keffler Construction actually received. As the court in *In re Lewis W. Shurtleff, Inc., supra* stated in regard to Section 547(b)(5):

In determining the amount that an alleged preferential transfer enables the creditor to receive, the creditor *must be charged with the value of what was transferred* plus any additional amount that he would be entitled to receive from a Chapter 7 liquidation." (Emphasis added)

*Id.* at 1421.