In re Richard SPADA a/k/a/ Spada Realty, Debtor.

CREDITORS' COMMITTEE, Plaintiff,

v.

Joseph V. SPADA, Sr., Donald Griffin, Ken Maula, Paul R. Budick, Stephanie Budick, First Eastern Bank, N.A.; and United Penn Bank, Bankruptcy No. 5–82–00416 Creditors' Committee, Appellant.

No. 89–5711.

United States Court of Appeals, Third Circuit.

Argued Feb. 1, 1990.

Decided May 22, 1990.

William H. Robinson, Jr. (argued), Hiscott and Robinson, Stroudsburg, Pa., for appellant.

Marshall E. Anders and Randall W. Turano (argued), Rosenblum & Anders, P.C., Stroudsburg, Pa., for appellees Donald Griffin and Ken Maula.

Ronald V. Santora (argued), Hourigan, Kluger, Spohrer & Quinn, P.C., Wilkes-Barre, Pa., for appellee United Penn Bank.

Before STAPLETON and MANSMANN, Circuit Judges and ACKERMAN, District Judge *.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

This appeal presents a challenge by creditors to two allegedly preferential pre-petition transfers involving real property of the debtor. In one, the bankruptcy court found that new value was contemporaneously exchanged consistent with 11 U.S.C. § 547(c)(1) of the Bankruptcy Code when the debtor consolidated three loans in exchange for a second mortgage on real property. We find that the bankruptcy court's findings were, in part, clearly erroneous to the extent that the transfer was only partially for new value and that it was legal error for the bankruptcy court to interpret section 547(c)(1) to allow *some* new value to enable a creditor to protect a transfer without a calculation of the amount of that new value. Because the bankruptcy court decided that there was not a preferential transfer pursuant to section 547(c)(1), it failed to reach the bank's assertion that the debtor was, in fact, solvent at the time of the transfer. With respect to the second transfer, we conclude that the bankruptcy court's finding that the sale of the property in question did not involve the debtor (and therefore was not a preferential transfer) was not clearly erroneous. We will, therefore, affirm in part and reverse in part the order of the district court which affirmed the bankruptcy court and remand for a determination of solvency at the time of the transfer followed by a calculation of new value if the debtor is found to have been insolvent.

## I.

The financial background of this matter involves the obligation of Richard Spada (the debtor) to United Penn Bank on three separate unsecured loans totalling in excess of $37,000. On March 15, 1982, Spada met with Arthur Williams, an executive of the bank, to discuss difficulties he was having in making payment on these loans. A contemporaneous memorandum by Williams noted that "[a]lthough [Spada's] interest is current, it has become a struggle for him to meet the payments in a timely manner," and recommended that the bank agree to consolidate the outstanding unsecured loans on somewhat more favorable terms to Spada, in exchange for which Spada would convey to the bank a second mortgage worth well in excess of $37,000. Williams expressed some urgency on the matter: "I feel we need to pursue this as quickly as possible and would ask for your concurrence on this preferred [interest] rate." On March 22, 1982, upon receiving the second mortgage from Spada, the bank consolidated the unsecured loans into a single demand loan in the amount of $37,000 and reduced the interest rate from approximately 21% to 15%. The agreement with the bank also provided that Spada would be required to pay only the interest during the first year of the loan. Additionally, the bank agreed to subordinate its position on its second mortgage if Spada were able to obtain financing to build a shopping center on the property. On June 7, 1982, less than 90 days after recording of the bank's mortgage, an involuntary petition in bank-

---

* Honorable Harold A. Ackerman of the United States District Court for the District of New Jersey, sitting by designation.

ruptcy was filed by Spada's creditors (the creditors).[1] On August 9, 1983, the property was sold in a private sale and the mortgage was satisfied out of the proceeds.

Also on March 22, 1982, Richard Spada transferred another parcel of land to his father, Joseph Spada, Sr.[2] Joseph Spada then conveyed this parcel to defendants Ken Maula and Donald Griffin for $10,000 and other consideration of additional work on behalf of Spada Construction Company, an entity other than the debtor, along with the cancellation of almost $6,000 in accounts receivable owed by Spada Construction Company to Griffin and Maula. The creditors contend that Joseph Spada acted as a straw party for his son Richard to shield this conveyance from the creditors. Finally, on March 4, 1983, Griffin and Maula transferred the parcel, for $33,000, to the defendants Budick, who mortgaged the land with defendant First Eastern Bank.[3]

The creditors commenced an adversary proceeding to set aside these two conveyances as preferential transfers under section 547 of the Bankruptcy Code. The bankruptcy court found that these were not preferential transfers and on appeal to the district court, 115 B.R. 793, the bankruptcy court's order was affirmed. The creditors then filed this appeal to our court.

## II.

### A.

The creditors claim that the mortgage between Spada and United Penn Bank is a preferential transfer which they can avoid under section 547(b).[4] In its answer, the bank denied the creditors' allegation that Spada was insolvent. *See* Section 547(b)(3). Basing its decision on the existence of new value in the consolidation of the loans into the new mortgage obligation, the bankruptcy court reached the conclusion, which the district court affirmed, that there was not a preferential transfer under the terms of section 547(b). Because of this resolution, neither the bankruptcy court nor the district court reached the insolvency issue. The bank did not raise this issue before us on appeal. Nevertheless, because we are reversing the district court's affirmance of the bankruptcy court's ruling that the transfer between the bank and the debtor was entirely for new value, we are constrained on remand to order the district court to make a determination of Richard Spada's insolvency *vel non* at the time of the loan consolidation.

### B.

Assuming *arguendo* that Spada is found to have been insolvent, the bank's argument that this transfer falls within the section 547(c)(1) exception to the preferential transfer rule must be addressed. Section 547(c) provides:

> The trustee may not avoid under this section a transfer—
>
> (1) to the extent that such transfer was

---

1. On February 14, 1983, the case was converted to a Chapter 11 bankruptcy.

2. This portion of the transfer is not challenged in this appeal.

3. On January 5, 1990, a Praecipe to Discontinue Appeal as to defendants Paul R. Budick, Stephanie Budick and First Eastern Bank, N.A., was filed by the creditors and was granted by our court. Therefore, we will not address any issues regarding these parties.

4. A trustee in bankruptcy may avoid preferential transfers pursuant to section 547 of the Bankruptcy Code which provides:

   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
   
   (1) to or for the benefit of a creditor;
   
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   
   (3) made while the debtor was insolvent;
   
   (4) made—
   
   (A) on or within 90 days before the date of the filing of the petition; or
   
   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
   
   (5) that enables such creditor to receive more than such would receive if—
   
   (A) the case were a case under Chapter 7 of this title;
   
   (B) the transfer had not been made; and
   
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
   
   11 U.S.C.A. § 547 (West Supp.1989).

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

11 U.S.C.A. § 547(c) (West 1979). "The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." *Matter of Prescott*, 805 F.2d 719, 727 (7th Cir.1986) (citing *In re Wadsworth Building Components*, 711 F.2d 122, 124 (9th Cir.1983)) (citations omitted). The determination of such intent is a question of fact. *In re T.I. Swartz Clothiers, Inc.*, 15 B.R. 590, 592 (Bankr.E.D.Va.1981). "[W]e exercise plenary review of the legal standard applied by the district and bankruptcy courts, but review the latter court's findings of fact on a clearly erroneous standard." *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3rd Cir.1986) (quoting *Universal Minerals Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 n. 6 (3rd Cir.1981)).

■ In *Matter of Prescott*, the Court of Appeals for the Seventh Circuit indicated that there must be some manifest desire by the parties that the exchange contemporaneously grant money or money's worth in new credit, goods, services, or property to the debtor in order to sustain a finding of intent. 805 F.2d at 728. The facts before us signify an intent by both parties that the consolidation of the three original loans into the new loan secured by a mortgage be a contemporaneous exchange for new value. While this intent is necessary to preclude the trustee from avoiding the transfer, the exchange must be in fact contemporaneous and in fact for new value.[5] There is no dispute between the parties that the exchange was contemporaneous. The issue here, however, is whether and *to what extent* the consolida-

tion and modification of the loans into a new mortgage obligation in fact constitutes "new value" as defined in section 547(a)(2) of the Code. What constitutes new value is a question of fact. *In re Rustia*, 20 B.R. 131 (Bankr.S.D.N.Y.1982); *In re Duffy*, 3 B.R. 263 (Bankr.S.D.N.Y.1980).

■ The bankruptcy court in this case properly determined that the bank's reduction of the interest rate and agreement to forgo all but interest payments for one year were valuable considerations that constituted new value to the debtor. However, after reaching this conclusion, the court failed to establish the value of the new consideration, and to compare it to the value of the security interest conveyed. Apparently the bankruptcy court concluded that once the creditor demonstrates that new value of any amount was conveyed to the debtor the entire transfer falls within the section 547(c)(1) exception to the preferential transfer rule. This implicit conclusion is contrary to both the language of the statute and the policy behind the preferential transfer rule. The plain language of section 547(c)(1) expressly states that a trustee is unable to avoid a transfer *"to the extent* that such transfer was intended ... to be a contemporaneous exchange for new value given to the debtor." (Emphasis added).

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning.

*Perry v. Commerce Loan Co.*, 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827 (1966), (quoting *United States v. American Trucking Ass'ns*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940)). We have examined the plain meaning of sections 547(c)(1) and 547(a)(2) in the context

---

**5.** Although § 547(c)(1) of the Bankruptcy Code facially requires only an in fact demonstration of a contemporaneous exchange, intent that the exchange be for new value also must be supported by the facts. *See In re F & S Central Manufacturing Corp.*, 53 B.R. 842, 850 (Bankr.E.

D.N.Y.1985) (The bankruptcy court found a determination of intent must be reserved for trial where no evidence had been submitted that the debtor had received any new value as a result of the exchange).

of the Bankruptcy Code as a whole and conclude that a determination of how much "new value" was involved in the exchange is mandated.

Section 547(a)2) of the Bankruptcy Code defines "new value" as

money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C.A. § 547(a)(2) (West Supp.1989). This definition of new value was intended, as construed from the House and Senate reports, "to codify the usual rules of consideration. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 372 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6328; S.R. No. 95–989, 95th Cong., 2d Sess. 87 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5873." *In re F & S Central Manufacturing Corp.*, 53 B.R. 842, 850 (Bankr. E.D.N.Y.1985). Although the substitution of one obligation for an existing obligation does not constitute new value, there is support for the proposition that a modification of the terms of an existing obligation may constitute consideration (i.e., new value). *Id.; see also* 9A Am.Jur.2d *Bankruptcy* § 551 (1980). *"To the extent* that a creditor can demonstrate that its agreement to modify the terms of the debtor's obligation gave the debtor money or money's worth in new credit, goods, services or property, there is no reason to avoid the transfer." *In re F & S Cent. Mfg. Corp.*, 53 B.R. at 850 (emphasis added) (*citing* 9A Am.Jur.2d *Bankruptcy* § 551 (1980)).

This issue was discussed by the Court of Appeals for the Eleventh Circuit in *In re Jet Florida Systems, Inc.*, 861 F.2d 1555 (11th Cir.1988). The defendant, American Airlines, did not deny that a preferential transfer had occurred pursuant to section 547(b), but defended on the basis of section 547(c)(1), contending that the debtor received new value consisting of, among other things, the ability to continue participating in a mutual ticket-honoring system. "Yet, rather than offer evidence of the value of the new credit extended or the services rendered to Air Florida, American proffered the novel theory that it need only show that some new value was intended." *Id.* at 1558.

The court rejected this "novel theory"-which is precisely the theory accepted by the bankruptcy and district courts here—concluding "that Congress was clear in requiring that a party seeking the shelter of section 547(c)(1) must prove the specific measure of the new value given to the debtor in the exchange." *Id.* The court also pointed out that "new value" is defined as "money *or money's worth* in goods, services, or new credit," section 547(a)(2) (emphasis added): "This language necessarily requires a specific dollar valuation of the 'new value'—the 'money's worth'—that the debtor received in the exchange." *Id.* at 1559. Finally, the court discussed the policy considerations behind this rationale:

American's interpretation of section 547(c)(1) would eviscerate the trustee's power to set aside preferential transfers. A creditor could retain the full value it received in exchange if it could show merely that the debtor and creditor intended for the "new value" to be worth *something,* however hypothetical or ephemeral. Section 547(c)(1) [sic—actually section 547 in its entirety] would become nothing more than an anti-fraud provision.

*Id.* The policy considerations are particularly present in the context of a refinancing arrangement such as the one presented in this case. If any amount of new value insulated a transfer from avoidance, then unsecured creditors could improve their position on the eve of bankruptcy merely by exchanging slightly lower interest rates or altered payment schedules for security on the loan. Such a situation would dramatically hinder the goal of the preferential transfer rule.[6]

---

6. In principle, a bankruptcy statute's section on

voidable preferences should basically read as

We agree with this reasoning in its entirety. We are aware that the Court of Appeals for the Tenth Circuit appeared to reject this position in *In re George Rodman, Inc.*, 792 F.2d 125, 128 (10th Cir.1986) ("We have examined §§ 547(c) and 547(a)(2) ... and cannot conclude that a computation of the value of the exchange is mandated."); however, that court has subsequently abandoned that position, distinguished *In re George Rodman* on the facts, and followed *Jet Florida*. *In re Robinson Bros. Drilling, Inc.*, 877 F.2d 32, 33–34 (10th Cir.1989); *see also* Aaron, *Bankruptcy Law Fundamentals* § 10.05[5] at 10–36.2 to 3 (rev. 1989) (criticizing *In re George Rodman*).

### C.

■ Turning to the facts of this appeal, we note that the district court affirmed the bankruptcy court's factual determination that the difference between the three preexisting loans and the new consolidated loan was so substantial that the new loan cannot be considered an obligation substituted for an existing obligation. Although there were substantial alterations in the new loan from the bank to the debtor, the record does not support the bankruptcy court's finding (or the district court's affirmance) that a contemporaneous exchange occurred wherein the *entire* amount was new value.

We find that the record supports the conclusion that the only new value intended by the parties to be granted the debtor was the bank's approximate six point reduction in the interest rate and the provision allowing the debtor to repay only interest for the first year of the loan. The bank's agreement to subordinate its mortgage should the debtor obtain financing to build a shopping center on the mortgaged property cannot be viewed as new value since, aside from being rather speculative, it at best amounts to a promise by the bank that

marginally reduces the value of the security interest it was contemporaneously receiving. In other words, it could hardly be new value to the debtor since the bank had no security interest to subordinate before the mortgage was conveyed. Further, the parties could not have intended for the principal of the new loan to be new value to the debtor since this principal was immediately used to consolidate the antecedent debt of the debtor's initial unsecured loans. We, therefore, hold that the bankruptcy court's findings of fact, on which the district court relied, were clearly erroneous and do not support a conclusion that the new loan by the bank was entirely for new value and thereby not a preference to be avoided by the creditors.

### III.

■ The creditors also challenge the bankruptcy court's conclusion that the transfer of the property from Joseph Spada to Griffin and Maula did not involve a preferential transfer. The district court adopted the bankruptcy court's basis of judgment which was the testimony of Griffin in regard to the relationship between himself, Joseph Spada, and Spada Construction Company. Characterizing the testimony as "very credible," the bankruptcy court noted Griffin's statements that he had no reason to believe that Joseph Spada was acting on anyone's behalf but his own. Further, Griffin testified that the forgiveness of the accounts receivable was to the benefit of Spada Construction Company. The involvement of Spada Construction Company in the transaction has no effect upon Richard Spada's involvement since it is a separate entity. We find that such factual determinations are fully supported by the record and pleadings submitted. We conclude that the bankruptcy court's finding, that Joseph Spada was not a straw party for Richard Spada concerning the

follows: "If a creditor tries to change his position after this extension of credit in order to improve his lot in an anticipated bankruptcy (or other collective) proceeding, or if the debtor at the behest of such creditor so tries to change the position for such creditor in order to improve

such creditor's lot in an anticipated bankruptcy.... the creditor must return any advantage so obtained."

T.H. Jackson, *The Logic and Limits of Bankruptcy Law* 130 (1986).

transfer of the property to Maula and Griffin, was not clearly erroneous.

## IV.

Because the new loan granted a partial preference to United Penn Bank to the extent that the amount received by the bank was in excess of the new value surrendered to the debtor by the bank, we will reverse in part the district court's order affirming the bankruptcy court's order in favor of the bank. We will remand this case to the district court with instructions to remand it to the bankruptcy court. Initially, the court should decide the issue of Richard Spada's insolvency. Upon a finding of solvency, the new value issue becomes moot since there is no preference which the trustee may avoid under section 547(b). If the bankruptcy court determines that Spada was insolvent at the time of the transfer, evidence may be submitted by the parties so that the precise amount of new value granted Richard Spada may be resolved. Once the bankruptcy court determines the value to Spada of the reduction in the interest rate and the one year moratorium on principal payments in the context of a $37,000 unsecured demand loan,[7] it should direct that (1) the bank pay to the bankrupt estate an amount equal to the amount realized upon the execution on the lien less that new value, and (2) that the bank thereafter be treated as the holder of an unsecured note having the terms and conditions of the March 22, 1982, note.[8]

For the reasons discussed above, we will affirm the district court's judgment upholding the bankruptcy court's order in favor of Maula and Griffin.

**7.** In determining the value of these new loan terms, the bankruptcy court should take into consideration the various factors affecting the value of the concessions at the time they were made. Just as an annuity contract is worth less if the life expectancy of the beneficiary is short, the value of the bank's agreement to forgo approximately 6% in future interest may be affected by the debtor's "life expectancy." Similarly the fact that the bank could call in the loan at any time may affect the value of its agreement to reduce future interest.

**8.** The purpose of the preferential transfer rule is *to return all parties to the position they would* have been in had it not been for the premature raid on the debtor's assets. Thus, where a debtor transfers a security interest to an existing creditor and no "new value" is received, once the preference is successfully avoided the credi-

tor is required to repay what it realized on the security interest and is returned to its unsecured status. *See Katchen v. Landy,* 382 U.S. 323, 330 & n. 5, 86 S.Ct. 467, 473 & n. 5, 15 L.Ed.2d 391 (1966); *Time Oil Co. v. Wolverton,* 491 F.2d 361, 364 (9th Cir.1974). To the extent the debtor received new value in connection with the transfer of a security interest to an existing creditor, the transfer was *not* in satisfaction of an antecedent debt, *see* Aaron, *Bankruptcy Law Fundamentals* § 10.05[5] at 10–36.2, and accordingly the amount the creditor is entitled to keep from the challenged transfer does not diminish the creditor's claim on the antecedent debt. Similarly, the debtor is entitled to keep the new value it received; in this case, the bank having received compensation for the change in loan terms favorable to the debtor, the loan will be governed by the new terms.