In re **JET FLORIDA SYSTEMS, INC.,**
**f/k/a Air Florida Systems,**
**Inc., Debtor.**

**JET FLORIDA, INC., Plaintiff–Appellee,**

v.

**AMERICAN AIRLINES, INC.,**
**Defendant–Appellant.**

No. 87–6055.

United States Court of Appeals,
Eleventh Circuit.

Dec. 27, 1988.

John H. Genovese, Stroock & Stroock & Lavan, David C. Pollack, Miami, Fla., for defendant-appellant.

John K. Olson, Tampa, Fla., for plaintiff-appellee.

Before VANCE and KRAVITCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

American Airlines, Inc. ("American") appeals from a judgment voiding $221,919 of a $375,297 payment by Air Florida, Inc. ("Air Florida") for the benefit of American as a preference under 11 U.S.C. § 547(b),[1]

---

**1.** Congress amended § 547 on July 10, 1984 to apply to cases filed 90 days after that date. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 553, 98

and entering judgment for that amount in favor of Jet Florida, Inc. ("Jet Florida"), the reorganized successor of Air Florida and Air Florida Systems, Inc. The United States District Court for the Southern District of Florida affirmed the bankruptcy court's determination that American had failed to establish its affirmative defenses that the payment was a "contemporaneous exchange for new value given to the debtor" under the meaning of 11 U.S.C. § 547(c)(1) or a payment "made in the ordinary course of business" under 11 U.S.C. § 547(c)(2). We affirm.

## I.

The parties do not dispute the facts underlying this appeal. When an airline honors a ticket that another airline has issued, it creates an account payable on the part of the issuing airline and a corresponding account receivable on the part of the airline honoring the ticket. Each month Airlines Clearing House, Inc. ("ACH") aggregates these debits and credits for its member airlines. If an airline is a net debtor in a given month, i.e., the ACH members aggregated had honored more of its tickets than it had of theirs, then the airline pays the amount of this net obligation to ACH, as agent for the member airlines, on the twenty-eighth day of the following month, or the first business day thereafter. Both American and Air Florida were members of ACH.

Air Florida was a net debtor to ACH for the months of March and April of 1984, but did not meet its obligations for either month. On May 29, 1984, when Air Florida defaulted for the second time, ACH expelled Air Florida. Over the following Memorial Day weekend Air Florida was able to negotiate a $5,000,000 loan. Using part of the proceeds from this loan, Air Florida paid into ACH the amount it owed for March and April. ACH then readmitted Air Florida, but on the condition that in the future Air Florida would settle its obligations to ACH two days before the customary settlement date.

In May 1984 Air Florida was again a net debtor. Under the special readmission agreement with ACH, Air Florida's settlement date for its obligations was June 26, 1984. Accordingly, on that date Air Florida transferred $1,572,450 to ACH, the amount of its net debt to ACH member airlines. Of this payment, $375,297 represented money Air Florida owed to American. American's payment to ACH for this period included $153,378 credited to Air Florida. On July 3, 1984, one week after making its June payment to ACH, Air Florida petitioned for bankruptcy under Chapter 11. Jet Florida commenced nineteen similar section 547(b) actions in the bankruptcy court to void as preferential the June transfer to ACH.

## II.

In this appeal American does not dispute that Jet Florida has made its prima facie case under section 547(b) to show that the $375,297 paid to ACH for the benefit of American was a preferential transfer.[2] Therefore, Jet Florida is entitled to set aside the transfer unless American can

Stat. 333, 392 (1984). Air Florida filed its Chapter 11 petition on July 3, 1984; therefore, we apply pre-amendment § 547.

2. 11 U.S.C. § 547 (1982) defined the elements of the prima facie case as follows:
 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
  (1) to or for the benefit of a creditor;
  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
  (3) made while the debtor was insolvent;
  (4) made—
  (A) on or within 90 days before the date of the filing of the petition; or

 (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
  (i) was an insider; and
  (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
  (5) that enables such creditor to receive more than such creditor would receive if—
  (A) the case were a case under Chapter 7 of this title;
  (B) the transfer had not been made; and
  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

show that the transfer falls within one of the statutory safe-harbors for otherwise voidable preferential transfers.

■ We note at the outset that we must affirm the findings of the district court unless they are clearly erroneous. Moreover, when the district court has affirmed the bankruptcy court's findings, as it did here, we will apply the clearly erroneous doctrine with particular rigor. *Birmingham Trust National Bank v. Case*, 755 F.2d 1474, 1476 (11th Cir.1985).

### A.

American first seeks the shelter of section 547(c)(1), which reads as follows:

> (c) The trustee may not avoid under this section a transfer—
>
> (1) to the extent such transfer was
>
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>
> (B) in fact a substantially contemporaneous exchange;

11 U.S.C. § 547(c) (1982). This section grants an affirmative defense to creditors who can prove that the transfer, although technically a credit transaction, was intended to be and was in fact a substantially contemporaneous exchange and not on account of an antecedent debt.[3]

The parties do not dispute the bankruptcy court's finding that American's $153,378 payment in June was new value given to Air Florida. Thus Jet Florida may not void the June $375,297 transfer to that extent. The dispute concerns the $221,919 balance.

American contends that the readmission of Air Florida to ACH constituted new value because it enhanced Air Florida's appearance of financial stability and also brought with it what was in essence the extension of new credit to Air Florida when member airlines would honor tickets issued by Air Florida, as well as unspecified connecting passenger revenue and ground services. Yet rather than offer evidence of the value of the new credit extended or the services rendered to Air Florida, American proffered the novel theory that it need only show that some new value was intended. The bankruptcy court, however, concluded that section 547(c)(1) required American to prove the specific valuation of the "new value." Applying this test, the court found that American had failed to introduce any credible evidence as to the actual economic value readmission to ACH brought Air Florida, and had failed to introduce any evidence whatsoever on the specific amount of new credit extended to Air Florida.

American argues that the court misconstrued section 547(c)(1) to require proof of specific valuation. Under American's view, all section 547(c)(1) requires is proof that the debtor and creditor intended that the debtor would receive new value in the exchange: the actual value the debtor received at the time of the exchange is irrelevant. American then asserts that its showing that Air Florida and ACH officials thought the readmission very important, if not essential, meets the requirements of section 547(c)(1).

American focuses exclusively on the use of "intended" in section 547(c)(1)(A). American argues that "intended" must apply both to the contemporaneity of the exchange and to the amount of the new value given to the debtor in the exchange. Under American's view, a court conducting an inquiry under section 547(c)(1) would focus exclusively on the subjective intentions of the creditor and debtor. Construing the whole of section 547, however, we conclude that Congress was clear in requiring that a party seeking the shelter of section 547(c)(1) must prove the specific measure of the new value given to the debtor in the exchange.

Section 547(c)(1) protects transfers only "to the extent" the transfer was a contemporaneous exchange for new value. A court must measure the value given to the

---

3. The legislative history illustrates the type of transaction that Congress intended to protect in § 547(c)(1). "Normally, a check is a credit transaction. However, for the purposes of this paragraph, a transfer involving a check is considered to be 'intended to be contemporaneous'...." H.R.Rep. No. 595, 95th Cong., 2d Sess. 373, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6329.

creditor and the new value given to the debtor in determining the extent to which the trustee may void a contemporaneous exchange. This provision indicates that a creditor seeking the protection of section 547(c)(1) must prove with specificity the new value given to the debtor.

Furthermore, the applicable statutory definition of "new value" that Congress provided in section 547(a)(2) expressly requires that the creditor prove the specific valuation of the "new value." [4] The relevant language for the purpose of deciding this case is the section's definition of "new value" as "money or money's worth in goods, services, or new credit." [5] This language necessarily requires a specific dollar valuation of the "new value"—the "money's worth"—that the debtor received in the exchange.

American's interpretation of section 547(c)(1) would eviscerate the trustee's power to set aside preferential transfers. A creditor could retain the full value it received in the exchange if it could show merely that the debtor and creditor intended for the "new value" to be worth *something*, however hypothetical or ephemeral.[6] Section 547(c)(1) would become nothing more than an anti-fraud provision.

■■■■ Thus, we conclude that a creditor must, as a part of its section 547(c)(1) affirmative defense, prove the specific valuation of the "money or money's worth in goods, services, or new credit" that the debtor received as "new value" in the contemporaneous exchange. The bankruptcy court found that American failed to meet this burden both as to the value of Air Florida's readmission to ACH and to the new credit allegedly extended to ACH. We cannot say that the court's finding was clearly erroneous. Therefore, American has not satisfied the requirements of section 547(c)(1).

### B.

American next claims that it is entitled to the shelter of the section 547(c)(2) safe-har-

---

4. The entire definition reads as follows:

> (a)(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, but does not include an obligation substituted for an existing obligation;

11 U.S.C. § 547(a)(2) (1982).

5. American relies on *Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.)*, 792 F.2d 125 (10th Cir.1986). Yet *Rodman* is inapposite. *Rodman* construed a different portion of the § 547(a)(2) definition of "new value" than the one relevant to this case. Moreover, *Rodman* did not come to its conclusion by construing the use of "intended" in § 547(c)(1)(A), as American does here. Thus American's reliance on *Rodman* is misplaced.

In *Rodman* the exchange at issue involved a payment to the creditor and a contemporaneous release by the creditor of a security interest on an oil well. The bankruptcy court found that at the time of the hearing (not necessarily at the time of the transfer) the oil well was valueless, and thus that the release of the lien was not an exchange for "new value" because it was an exchange for *no* value. A panel of the Tenth Circuit reversed the bankruptcy court and held that "[t]he plain language of the definition does not require valuation of the property transferred." *Id.* at 128.

We do not believe that *Rodman* stands for the broad proposition that § 547(c)(1) does not ever require valuation of the new value. *Rodman* correctly states that § 547(c)(1) did not require the bankruptcy court to calculate the value of the well *at the time of the hearing*. The proper inquiry under § 547(c)(1) should be directed at the valuation of the transfer *when made*. The *Rodman* court was correct when it observed that "release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor ..."—the applicable statutory definition of "new value"—does not on its face require a valuation of the lien released by the creditor. We would not, however, go so far as to suggest that if the lien were valueless at the time of the contemporaneous exchange the preferential transfer would nevertheless be insulated.

6. Even if we were to adopt American's view that § 547(c)(1)(A) requires only that the creditor and debtor intend that the debtor receive "new value," American would still fail because the definition of "new value" requires proof of "money's worth" or specific valuation. Thus the strongest case American could have made under its interpretation of this section would have been to introduce specific evidence that it was *intended* that Air Florida would receive at least $221,919 in new credit or services. Yet American did not even do this. Instead American simply rested on a showing that it was intended that Air Florida would receive some unspecified value.

bor for payments made in the ordinary course of business.[7] Here American urges no novel interpretation of the relevant code provisions, but instead challenges the bankruptcy court's factual conclusions.

■ Section 547(c)(2) only insulates payments "made not later than 45 days after such debt was incurred." 11 U.S.C. § 547(c)(2)(B). The bankruptcy court found that American had failed to offer any evidence as to what debt was incurred within the 45 day time period. Therefore, the bankruptcy court ruled that American had failed to satisfy this element of its section 547(c)(2) affirmative defense.

American argues, however, that the debt in question—Air Florida's debt to ACH as agent for member airlines—was incurred on the settlement date, and not each time a member airline honored a ticket issued by Air Florida. Therefore, because the settlement date was undisputed, American asserts that it has met this element of its section 547(c)(2) defense.

We cannot accept American's argument. The settlement date with ACH was just that, a date on which the member airlines would settle their mutual obligations. We cannot say that the court's finding that these obligations were incurred each time an airline honored a ticket issued by another airline was clearly erroneous.

■ Alternatively, the bankruptcy court also concluded that the settlement date specified in the readmission agreement with ACH—two days before the customary settlement date—made the payment outside the "ordinary course of business." What the ordinary course of business is between a debtor and a creditor is essentially a factual question. Although some minor changes in details regarding payment of debts incurred in the ordinary

course of business will not automatically remove the payments from the scope of section 547(c)(2), *e.g., In re Magic Circle Energy Corp.*, 64 B.R. 269 (Bankr.W.D. Okla.1986) (substitution of longer term note for short-term debt), we cannot say that the court's finding was clearly erroneous. Therefore, American has also failed to establish that element of its section 547(c)(2) affirmative defense.

Jet Florida has established it prima facie case under section 547(b) to void the transfer to ACH as a voidable preference. American has failed to enter any evidence that would suffice to bring it within the protection of either section 547(c)(1) or section 547(c)(2). Therefore, the judgment of the district court is

AFFIRMED.

---

7. The statute as it applies to this case reads as follows:
   (c) The trustee may not avoid under this section a transfer—

   .  .  .  .  .

   (2) to the extent that such transfer was—
   (A) in payment of the debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

   (B) made not later than 45 days after such debt was incurred;
   (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
   (D) made according to ordinary business terms;

   11 U.S.C. § 547(c)(2) (1982).