COWEN, Circuit Judge,
dissenting.
Although I agree with the majority that the $33,333 payments from the partnership, Kumar Bavishi & Associates (hereinafter *947 “the debtor”), to the Appellees, R.K. Maha-jan and his brother S.S. Mahajan, were preferential transfers under the Bankruptcy Code (“the Code”), 11 U.S.C. § 547(b) (1982), I do not agree that the Appellees have established a section 547(c)(1), or even a section 547(c)(4), defense because I am unconvinced that any “new value,” as required by those provisions, has been advanced by the Appellees. Moreover, I also believe that the district court erred in concluding, as a matter of law, that under Pennsylvania’s Uniform Limited Partnership Act, 59 Pa.Cons.Stat.Ann. § 527 (Pur-don Supp.1989) (now repealed), there was no payment made between the debtor and the Appellees.[1]
I.
Initially, I begin with the premise that the $33,333 payment made by the debtor to the Appellee in April 1984 was a preferential transfer. For the same reasons that the majority gives, I am not persuaded by the Appellee’s argument that this payment was either not a transfer of an interest in the debtor’s property or that the loan from the lending institution, Salween Financial (“Salween”), was earmarked funds.
Thus, in order for the Appellee to avoid the Trustee’s preference action, he must establish a defense under section 547(c) of the Code. The Appellee claims a defense under both sections 547(c)(1) and (c)(4) of the Code. Both of these sections require that the creditor advance new value to the debtor in order to insulate a preferential transfer from the Trustee’s avoidance power. I find that neither the simple giving of a guarantee nor the subsequent honoring of that guarantee constitutes new value to the debtor under the facts and the proof in this case.
The Code defines “new value” as “money or money’s worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation_” 11 U.S.C. § 547(a)(2). Relying upon dicta in a footnote from Eisenberg v. J.L. Int’l, Ltd. (In re Sider Ventures & Servs. Corp.), 33 B.R. 708, 712 n. 2 (Bankr.S.D.N.Y.1983), aff’d on other grounds, 47 B.R. 406 (D.C.N.Y.1985),[2] the majority finds that the Appellee’s guarantee of Salween’s $200,000 loan to the debt- or satisfies the Code’s definition of new value. Adopting the analysis of the Sider Ventures court, the majority quotes the following portion of that opinion: “J.L. [the creditor] gave new value in that it caused the Bank to provide new money to Sider [the debtor]; it provided money’s worth in the form of a service to wit, acting as guarantor; and finally it gave money’s worth in the form of new credit to Sider by virtue of the increase in the guarantee obligation.” Id.[3]
*948 I believe that the mere giving of a guarantee cannot be logically viewed as the advance of new credit to the debtor. Alternatively, I find that the Appellee has simply failed to prove what the value, if any, of the guarantor service was if the guarantee is viewed as having independent value. First, viewing a guarantee as new credit simply leads to absurd results. If the Appellee’s guarantee is viewed as advancing $200,000 worth of new credit, i.e., the value of the loan, then the other five or six guarantors, as well as Salween, would also have a potential $200,000 new value defense under section 547(c), thus totalling either $1,400,000 or $1,600,000 worth of new credit that could be potentially claimed against the debtor’s estate on the basis of the $200,000 loan. On the other hand, if the Appellee’s guarantee is viewed as advancing the Appellee’s ultimate pro rata share of the obligation, i.e., a $41,000 claim of new credit against the debtor’s estate, then the other guarantors who also honored their guarantees collectively have a $159,000 potential new credit claim and Salween potentially a $200,000 claim. Again, this leads to a total of $400,000 worth of new credit that could be claimed against the debtor’s estate based on a $200,000 loan.
A simple example should show the untenability of viewing the simple act of making a guarantee as advancing new credit to the debtor. Suppose in our case that the debt- or had an antecedent unsecured debt to Salween of $300,000. Suppose also that before the actual loan transaction that occurred in this case, but during the preference period, the debtor had repaid to Salween $200,000 of that antecedent loan. Then, after both the $200,000 loan transaction occurs and the bankruptcy petition is filed, Salween would have a section 547(c)(4) defense to this earlier $200,000 preferential transfer based on its advance of $200,000 to the debtor in April 1984. However, under the majority’s analysis, both Mahajan brothers would also have a new credit offset of $33,333 under Section 547(c)(1). Thus, if the guarantee is viewed itself as advancing new credit, the result in this hypothetical situation is that $266,666 of new credit has been advanced to the debtor, for purposes of section 547(c), on the basis of a mere $200,000 loan to the debtor. A legal principle that has such absurd and unfair consequences cannot stand. Obviously only $200,000 of new credit was advanced to the debtor as part of the April 1984 transaction and this new credit was advanced by Salween and only by Salween.
Alternatively, the majority might be arguing that the guarantee has independent value as money’s worth of service to the debtor, over and above the amount of new credit advanced by Salween. This value might be analogized to the premium one might pay to an insurance company to insure the repayment of the insured’s debt to the bank. The calculation of this value would have to involve both the potential liability of $200,000 on the guarantee and the expected liability of somewhere between $33,333 and $28,500,[4] discounted by the possibility of the debtor defaulting.[5] Yet the record before us reveals no evidence as to the money’s worth in value of the Appellee’s alleged guarantor service. Although the majority waves its hands at what this actual value was,[6] I am simply *949 not convinced that this value is not either too indeterminate or speculative to serve as new value in this context, or, assuming such guarantor service does have some value, that such value would be equivalent to $33,333.
At any rate, this Court's recent decision in In re Spada, 903 F.2d 971 (3d Cir.1990), holds “that a determination [by the bankruptcy court] of how much ‘new value’ was involved in the exchange is mandated” by the statute. Id. at 976 (emphasis added). Such a determination is necessary because the court must compare how much new value is given to the amount of the preferential transfer with the creditor:
[A]fter reaching th[e] conclusion [that a reduction in interest rate and a delay in principal repayment on several unsecured loans was new value], the court failed to establish the value of the new consideration, and to compare it to the value of the security interest conveyed [by the debtor to the creditor]. Apparently the bankruptcy court concluded that once the creditor demonstrates that new value of any amount was conveyed to the debtor the entire transfer falls within the section 547(c)(1) exception to the preferential transfer rule. This implicit conclusion is contrary to both the language of the statute and the policy behind the preferential transfer rule. The plain language of section 547(c)(1) expressly states that a trustee is unable to avoid a transfer “to the extent that such transfer was intended ... to be contemporaneous exchange for new value given to the debtor.”
Id. at 975. See also Jet Florida, Inc. v. American Airlines, Inc. (In re Jet Florida Sys., Inc.), 861 F.2d 1555, 1558-59 (11th Cir.1988).[7]
In this case the bankruptcy court made no finding as to the value of the Appellee’s alleged guarantor service to the debtor. Consequently, the court made no comparison of the relative values of the service and the preferential transfer. In fact, from the record before us it is clear that the Appel-lee utterly failed to offer proof as to the value of the alleged guarantor service provided to the debtor. Since I “conclude that a creditor must, as a part of its section 547(c)(1) affirmative defense, prove the specific valuation of the ‘money or money’s worth in goods, services, or new credit’ that the debtor received as ‘new value’ in the contemporaneous exchange,” Jet Florida, 861 F.2d at 1559, I find, in keeping with this circuit’s precedent, that the Ap-pellee has not proven a section 547(c)(1) defense in this case.[8]
*950 II.
The Appellee also claims a defense to the $33,000 transfer under section 547(c)(4) of the Code. This section reads in relevant part:
(c) The trustee may not avoid under this section a transfer—
(4) to or for the benefit of a creditor; to the extent that, after such transfer; such creditor gave new value to or for the benefit of the debtor....
11 U.S.C. § 547(c)(4). Thus, as with section 547(c)(1) the creditor must have advanced the debtor “new value,” only under this exception the “new value” need not be contemporaneous with the preferential transfer but could occur sometime after the transfer.
The Appellee argues that even if his guarantee at the time of the preferential transfer did not constitute “new value,” once he was called upon to pay Salween his pro rata share of that obligation, i.e. $41,-000, that payment constituted “new value” to the debtor. See Bergquist v. Anderson-Greenwood Aviation, Corp. (In re Bellanca Aircraft Corp.), 850 F.2d 1275, 1281 n. 12 (8th Cir.1988). I disagree.
“In determining whether a creditor has extended ‘new value,’ the focus is not on the harm or detriment to the creditor, but rather the issue before the Court is whether there is an augmentation or material benefit to the debtor’s estate.” Wolinsky v. Central Vermont Teachers Credit Union (In re Ford), 98 B.R. 669, 682 (Bankr.D.Vt.1989). See also Charisma Inv. Co., N.V. v. Air Florida Sys., Inc. (In re Jet Florida Sys., Inc.), 68 B.R. 596, 602 (S.D.Fla.1986), aff'd per curiam, 841 F.2d 1082 (11th Cir.1988). Therefore, the fact that the Appellee suffered a loss when he was forced to honor his guarantee is not relevant to our determination here; instead, we must look to whether the debtor’s estate was augmented or materially benefitted by the honoring of the guarantee. I cannot see how it was.
Before the guarantees were honored, the debtor had received $200,000 of new value from Salween and incurred a corresponding increase in its debt of $200,000. After the guarantees were paid, the debtor’s estate did not increase in value nor was it benefit-ted in any way. Isolating this transaction for purposes of our analytical discussion, after the guarantees were paid the estate still retained the $200,000 in new value from Salween and still had a debt of a *951 corresponding amount.[9] No augmentation of the estate or benefit accrued to the estate because the guarantors were forced to pay. The assets and liabilities of the estate remained exactly the same. All that changed was possibly the identity of the party who might ultimately receive repayment of some of the debt.[10]
III.
The Trustee also appeals the order of the district court to the extent that it denied the Trustee’s state cause of action under Pennsylvania’s Uniform Limited Partnership Act (“the Act”), 59 Pa.Cons.Stat.Ann. § 527 (Purdon Supp.1989) (now repealed). Section 527 of the Act reads:
(a) General rule. — A limited partner also may loan money to and transact other business with the partnership, and, unless he is also a general partner, receive on account of resulting claims against the partnership, with general creditors, a pro rata share of the assets. No limited partner shall in respect to any such claim:
(1) Receive or hold as collateral security any partnership property.
(2) Receive from a general partner or the partnership any payment, conveyance, or release from liability, if at the *952 time the assets of the partnership are not sufficient to discharge partnership liabilities to persons not claiming as general or limited partners.
(b) Effect of violation. — The receiving of collateral security, or a payment, conveyance, or release in violation of the provisions of subsection (a) is a fraud on the creditors of the partnership.
59 Pa.Cons.Stat.Ann. § 527. The Trustee argues that the Appellee is clearly a limited partner who received a payment of $33,333 from the debtor. Furthermore, the Trustee contends that its expert witness adequately established at trial that the debtor was insolvent before April 1984 when the payment was made. The bankruptcy court did not address the Trustee’s state fraudulent conveyance claim under section 527. Yet, the district court found, as a matter of law, that there had been no “payment” under subsection (a)(2) of the Act because of its finding of a contemporaneous exchange, in April 1984, of value-for-value under the Code.
Since I have found that the Appellee has simply not established any contemporaneous exchange of value involved in the April 1984 transaction, see supra section I, I believe that the district court’s legal conclusion is faulty. However, the Appellee argues that even if the district court’s reasoning is wrong, the Trustee failed to prove the insolvency of the debtor as of April 1984, because the Trustee’s expert, in testifying as to the debtor’s liabilities, failed to subtract the debts owed to the general partner, as well as other limited partners, as required by the statute. I am persuaded by the Appellee’s argument to the extent that from the record before us reasonable minds could differ on whether the Trustee carried his burden of proof that the debtor was actually insolvent in April 1984 for purposes of the Act.[11] Because the bankruptcy court did not make any factual findings on this issue, I would vacate the district court’s order as to this cause of action, and remand with directions to remand the case to the bankruptcy court for a finding as to whether the debtor was insolvent at the time of the $33,333 payment.[12]
IV.
In conclusion, I find that the $33,333 transfers to the Mahajan brothers were preferences to which they have not established a legitimate defense under section 547(c). Thus, I would reverse the judgment of the district court on the Trustee’s Bankruptcy Code cause of action. In addition, I would vacate the judgment for the Mahajans on the Trustee’s state fraud claim under the Limited Partnership Act, and remand the case to the district court for a finding by the bankruptcy court as to whether the debtor was insolvent at the time of the $33,333 payments.

. For convenience, I will henceforth adopt the majority’s convention of referring to both of the Mahajan brothers as "the Appellee.”

. My research uncovered no court which has held unequivocally that a guarantee alone is "new value” under section 547(a)(2). However, one bankruptcy court has apparently concluded just the opposite: "it should be noted that a guarantee is nothing more than a contractual obligation evidenced by a writing and does not, alone, satisfy the definitional requirements set forth in section 547(a)(2)." Bergquist v. Anderson-Greenwood Aviation, Corp. (In re Bellanca Aircraft Corp.), 56 B.R. 339, 394 (Bankr.D.Minn.1985), aff’d in part and remanded in part, 850 F.2d 1275 (8th Cir.1988) (while the appellate court cited the Sider Ventures case approvingly, it was in the context of the appellate court’s broader holding that a creditor who both guarantees payment of a debt and subsequently honors that guarantee advances new value to the debtor).

. I find it unclear from the majority’s opinion exactly which section 547(a)(2) category is thought to include the Appellee’s guarantee. The majority affirmed the district court’s judgment for the reasons stated by it: "since [Appel-lee’s] personal guarantee to the bank was an essential prerequisite to the bank’s willingness to lend 1200,000 to the partnership, [Appellee] should be regarded as having provided either 'services’ or ‘credit’ to the partnership.” App. at 505 (emphasis added). As quoted in the text, the Sider Ventures court found that the guarantee in that case was both a service and new credit to the debtor. The majority writes that the court’s analysis in Sider Ventures "applies to this case.” Thus, I am not sure whether the *948 majority is holding that the Appellee’s guarantee in the case sub judice was money’s worth in service to the debtor, or constituted new credit, or both. At any rate, I believe that a careful analysis of this case reveals that the Appellee failed to prove that its guarantee constituted either money’s worth in service or new credit to the debtor.

.The expected liability was between $33,333 and $28,500 since the record is unclear as to whether six or seven limited partners gave guarantees for the loan before the preferential transfers were made. See App. at 185-86, 189, 430, 230, 237.

. Of course, for this analysis, the actual loss incurred by the Appellee is irrelevant. If the majority is claiming that the Appellee gave money’s worth in service to the debtor in a contemporaneous exchange for $33,333, then the value of that service must be judged at the time of the exchange not at the time of the loss.

. The majority writes: "The guarantee exposed appellee to a potential liability of $200,000 and an actual liability of $41,000. The debtor re *949 ceived $200,000 in cash as a result of appellee's guarantee. The ‘new value’ transferred by ap-pellee was sufficient in relation to the $33,333 transferred by debtor to appellee to satisfy the requirements of section 547(c)(1)." See supra, at 946.

. The Jet Florida court explained:
Construing the whole of section 547 ... we conclude that Congress was clear in requiring that a party seeking the shelter of section 547(c)(1) must prove the specific measure of the new value given to the debtor in the exchange.
Section 547(c)(1) protects transfers only “to the extent” the transfer was a contemporaneous exchange for new value. A court must measure the value given to the creditor and the new value given to the debtor in determining the extent to which the trustee may void a contemporaneous exchange. This provision indicates that a creditor seeking the protection of section 547(c)(1) must prove with specificity the new value given to the debtor.
Furthermore, the applicable statutory definition of “new value” that Congress provided in section 547(a)(2) expressly requires that the creditor prove the specific valuation of the "new value." The relevant language for the purposes of deciding this case is the section’s definition of “new value” as "money or money’s worth in goods, services, or new credit." This language necessarily requires a specific dollar valuation of the “new value” — the “money’s worth” — that the debtor received in the exchange.
Jet Florida, 861 F.2d at 1558-59 (footnotes omitted). The Spada panel noted that it agreed with the Eleventh Circuit's "reasoning in its entirety.” Spada, at 977.

. The use of a section 547(c)(1) defense in our situation is really quite troubling for another reason. As one commentator has explained: "The sparse legislative history of section 547(c)(1) indicates that its purpose was to protect exchanges of property that might literally be considered credit transactions when the transactions were clearly intended to be contemporaneous transfers.” 4 Collier on Bankruptcy § 547.09, at 547-42 & n. 2 (15th ed. 1990) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. *950 178 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, as follows: "The exception is a simple one, excepting a transfer that is really not on account of an antecedent debt.... No doubt a purchase by the debtor of goods or services with a check, if deemed to be on credit by state law, would be insulated by this exception. Though strictly speaking the transaction may be a credit transaction because the seller does not receive payment until the check is cleared through the debtor’s bank, it is generally considered and intended to be a contemporaneous transaction, and assuming the check is promptly deposited and cleared, is in fact substantially contemporaneous.”). See also H.R.Rep. No. 595, 95th Cong., 2d Sess. 373, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6329 (“Normally, a check is a credit transaction. However, for the purposes of this paragraph, a transfer involving a check is considered to be ‘intended to be a contemporaneous exchange,’ and if the check is presented for payment in the normal course of affairs ..., that will amount to a transfer that is 'in fact substantially contemporaneous.’ ”). In the case sub judice there is no problem with the way that the debtor is paying for the Appellee’s alleged services such that it makes the transaction falsely appear like a credit transaction under state law. In fact, the Appellee is not even a regular supplier of goods to the debtor. Rather what is really going on here is that one intimate creditor, is getting a transfer within the preference period from the debtor on account o/ an antecedent debt, precisely the type of transaction that a trustee should be able to avoid and precisely the type of transaction that (c)(1) is not intended to insulate.
In addition, the majority is quick to allow the Mahajan brothers a defense to their preferential receipts. But what if all the guarantors had received a preferential transfer equal to their pro rata share of the obligation and thus none of the $200,000 loan was used by the debtor as working capital? Would the majority be as quick in granting all of these intimate creditors a(c)(l) defense under those facts? Or is the majority’s holding limited to a certain amount of the loan being used by the debtor for working capital, as opposed to paying off the antecedent debts of limited partners? If so, then how much is necessary? In this case one third of the loan went to the Mahajan brothers.

. Moreover, by the time that the guarantees were honored the debtor had already petitioned for bankruptcy and no payment of an unsecured debt could be demanded. This raises another issue that troubles me, although I do not rely upon it for my analysis. Courts are split on whether postpetition advances of new value qualify under section 547(c)(4). Compare In re Thomas W. Garland, Inc., 28 B.R. 87 (Bankr.E.D.Mo.1983) (allowing postpetition advances to qualify) with Bergquist v. Anderson-Greenwood Aviation, Corp. (In re Bellanca Aircraft Corp.), 850 F.2d 1275, 1284-85 (8th Cir.1988) (disallowing (c)(4) protection to postpetition advances). An emerging trend is developing to deny protection to postpetition advances. Wolinsky v. Central Vermont Teachers Credit Union (In re Ford), 98 B.R. 669, 683 (Bankr.D.Vt.1989). Although several reasons are given for this denial, at least two are applicable here. The first reason is statutory, relying on the provision in section 547(c)(1) that states that the creditor must give new value to or for the benefit of the debtor. Such wording has led some courts to conclude that Congress meant to exclude postpetition advances since:
Upon filing of a petition for relief, an estate is created consisting of all the assets and properties of the debtor. Such estate is a separate and distinct entity from the debtor. Moreover, although the debtor, as debtor in possession, is bestowed with nearly all of the rights and powers and is required to perform most of the functions and duties of a trustee, including the operation of the debtor’s business, obligations incurred and assets received post-petition become the obligations and assets of the estate. Strictly applying the terms of section 547(c)(4), therefore, it becomes clear that postpetition advances of new value ostensibly to or for the benefit of the debtor should instead be allocated to the debtor’s estate.
Bellanca Aircraft, 56 B.R. 339, 396 (Bankr.D.Minn.1985), aff’d in part and remanded in part on other grounds, 850 F.2d 1275 (8th Cir.1988) (citations omitted). In addition, there is no mutuality of debt in this situation. In re Ford, 98 B.R. at 683.

. Additionally, the facts of this case are far removed from the rationale behind section 547(c)(4). As this Court has explained:
Section 547(c)(4) has two interrelated purposes. First, the section is designed "to encourage trade creditors to continue dealing with troubled businesses.” In re Gold Coast Seed Co., 30 B.R. 551, 553 (9th Cir. BAP 1983). In the ordinary course of business, suppliers provide goods to businesses on credit. The financial pressure that would result if creditors were to force an ailing company to pay for supplies upfront could turn many a troubled company into a bankrupt one. By allowing creditors to rely on payments of back debt in shipping new goods, section 547(c)(4) serves the purpose of avoiding unnecessary bankruptcies.
Second, section 547(c)(4) is designed to "treat fairly a creditor who has replenished the estate after having received a preference.” In re Almarc Mfg., Inc., 62 B.R. 684, 688 (Bankr.N.D.Ill.1986). See also In re American International Airways, Inc., 68 B.R. 326, 337 (Bankr.E.D.Pa.1986) (Section 547(c)(4) "protects creditors who deal with financially unstable businesses and reasonably rely on their payments as a consideration for providing these future services.”).
New York City Shoes v. Bentley Int’l, Inc. (In re New York Shoes, Inc.), 880 F.2d 679, 680-81 (3d Cir.1989). The Appellee in this case was not a supplier or trade creditor of the debtor, and therefore was not relying on the debtor to pay past debts in order to ship new goods or provide new services to the debtor. Rather, the Appel-lee was a limited partner in the debtor. Applying the section 547(c)(4) exception to this case in no way serves the Code’s purpose of encouraging trade creditors to continue dealing with troubled businesses in order to prevent bankruptcies. In fact, I would argue that applying the defense here would encourage just the opposite.

. I note that this does not effect my conclusion that the Trustee should prevail on his Code action. The definition of insolvency under the Code does not involve the subtraction of partnership liabilities as does the Act. The Appellee makes no argument that the debtor was solvent for Code purposes at the time of the preferential transfers and thus the 90 day presumption of insolvency is applicable.

. I have reflected on the Appellee's other arguments as to why we should hold that the Trustee has not established a prima facie violation of section 527, including the earmarking and non-transfer of an interest in property arguments made in conjunction with the preference issue above, and find them unpersuasive.