**In re Aaron D. SILVER and Jerilyn H. Silver.**

**Aaron D. SILVER and Jerilyn H. Silver, Plaintiffs,**

v.

**AVNET, INC., Defendant.**

**Bankruptcy No. 11–87–01194 R S.**
**Adv. No. 87–0271 R.**

United States Bankruptcy Court,
D. New Mexico.

Aug. 6, 1991.

James Jacobsen, Albuquerque, N.M., for Silver.

Debra Romero Thal, Albuquerque, N.M., for Avnet, Inc.

## MEMORANDUM OPINION

STEWART ROSE, Chief Judge.

The ruling of the court is that Defendant Avnet received an avoidable preference under section 547 when it collected its judgment from the plaintiffs Silver. Silver could not have intended a contemporaneous exchange by payment of a judgment in exchange for a release of a judgment lien when he did not know of the existence of the judgment lien. One can not intend to make an exchange if he is unaware that he is receiving something.

Fact patterns in preference cases are quite often convoluted, see *Jet Florida Systems, Inc.*, 861 F.2d 1555 (11th Cir.1988). That is not the case in this proceeding. However, the particular fact pattern in this case does appear to be unique.

The facts in this case are:

(1) On October 9, 1986 Avnet obtained judgment against Santa Fe Private Equity Fund (SFPEF) and Silver in the amount of $76,275 plus interest, cost and attorney fees. (Trial Exhibit 1).

(2) On October 31, 1986 Avnet, Silver and SFPEF agreed as follows:

(a) That Avnet's costs and attorney fees were $6000;

(b) That Silver and SFPEF would give $120,000 of collateral as security within 5 days;

(c) That Silver and SFPEF would pay $90,000 in five (5) installments and if so paid Avnet would release its judgment and any liens and collateral therefor;

(d) That Silver and SFPEF waived any appeal;

(e) That if Silver or SFPEF failed to perform any portion of the agreement, Avnet could enforce its judgment, this agreement, or its rights in any security and that Avnet would be entitled to its costs and attorney fees in enforcing such rights;

(f) That as long as Silver and SFPEF complied with this agreement, Avnet would not levy execution. (Trial Exhibit 2).

(3) On November 6, 1986 Avnet recorded its judgment lien with the County Clerk of Santa Fe County, thereby creating a lien upon all the real property of Silver in that County. (Trial Exhibit 3).

(4) Thereafter Silver paid Avnet $25,000, but then failed to make the remainder of the payments called for under the agreement.

(5) On March 10, 1987 Avnet filed suit against Silver in the Santa Fe County District Court to foreclose its judgment lien. (Trial Exhibit 5).

(6) On March 11, 1987 a U.S. Marshall accompanied by Avnet's attorney arrived at Silver's home unannounced. They advised Silver that the Marshall was to proceed with the seizure of Silver's property, principally household goods and furnishings, and that a moving van would arrive shortly.

(7) To avoid the seizure, Silver proposed to pay the balance of the judgment by his personal check and to arrange that the check be honored by Los Alamos National Bank. Avnet's attorney agreed. Silver called Enloe, the bank president, to make arrangements and told Avnet's attorney that the Bank agreed. The Marshall did not proceed with execution.

(8) Avnet's Attorney took Silver's check to the bank to exchange for a cashier's check. Enloe told Avnet's attorney that he needed to obtain Silver's signature on certain documents to accomplish the transaction, and called Silver to come to the Bank for that purpose.

(9) Before Silver left his residence to go to the Bank he was served with the suit to foreclose the judgment lien. Silver testified that he did not read the complaint nor understand its contents.

(10) Silver went to the bank and signed the necessary documents. The Bank gave Avnet's attorney a cashier's check for the full amount of the judgment, $76,906.95 (Trial Exhibit 8), and agreed that the check would be honored upon presentment. (Trial Exhibit 9).

(11) On March 24, 1987, Silver's attorney wrote to Avnet's attorney suggesting, among other things, that since the judgment had been paid in full, Avnet should file a satisfaction and release any judgment liens. (Trial Exhibit 10).

(12) In compliance with this request and as soon as the cashiers check had been honored by the Bank, Avnet released its judgment lien.

The only issue that remained for trial was that raised by Avnet's affirmative defense,[1] under 11 U.S.C. 547(c)(1)(A). The court previously determined on motion or Avnet conceded all of the elements required of Silver to prove a preference. Thus, the court had already determined that Silver's payment of the judgment to Avnet was a transfer of an interest of the debtor in property to a creditor, Avnet, on account of an antecedent debt, the judgment, while Silver was insolvent. Silver paid the judgment within 90 days before the filing of his petition in bankruptcy and the payment enabled Avnet to receive more than it would have received if this were a case under chapter 7, the transfer had not been made, and Avnet had received payment under the bankruptcy code.

11 U.S.C. 547(c)(1) provides:

The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

The evidence showed that Silver's payment of the judgment required Avnet to release its judgment lien and that Avnet released

1. 11 U.S.C. 547(g) provides:
"For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section."

that judgment lien as soon as the Bank's cashier's check was paid. This is a contemporaneous exchange as contemplated by subsection B. The evidence further showed that the release of the judgment lien was new value given to the debtor. New value is defined in 11 U.S.C. 547(a)(2), relevant to this transaction as follows:

> "(2) 'new value' means ... release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, ..."

Avnet released its unavoidable judgment lien in exchange for payment of its judgment,[2] and did so in a contemporaneous exchange.

"The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." *In Re Spada*, 903 F.2d 971, 975 (3rd Cir.1990) quoting *Matter of Prescott*, 805 F.2d 719 (7th Cir.1986). The existence of intent is a question of fact. *Id.* The problem with Avnet's proof in this case is that it failed to show that Silver intended to make a contemporaneous exchange for new value, that is, to obtain a release of Avnet's judgment lien on his real property in exchange for payment of the judgment. Silver could not have *intended* to obtain the release of the judgment lien on his property, when he did not know of its existence. The court finds as a matter of fact that the transfer in this case does not come within the exception of 11 U.S.C. 547(c)(1)(A) since it was not intended by the debtor as a contemporaneous exchange for new value.

Upon payment of the judgment Avnet shall be entitled to an unsecured claim in the amount of its judgment as amended and/or its payment agreement with Silver. *In Re Spada*, 903 F.2d 971 (3rd Cir.1990).

The foregoing constitute the court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052. Counsel for the debtor-in-possession is requested to prepare the appropriate form of judgment within 10 days.

---

**2.** The release of a judgment lien is a transfer. *See In Re Rodman, Inc.*, 792 F.2d 125 (10th Cir.1986); 11 U.S.C. 101(50).