In re ADELPHIA AUTOMATIC
SPRINKLER CO., Debtor.

Mitchell W. MILLER, Trustee, Appellant,

v.

BODEK & RHODES, INC.,
et al., Appellees.

Civ. A. No. 93–5745.

United States District Court,
E.D. Pennsylvania.

July 5, 1995.

Adelphia Automatic Sprinkler Co., West Conshohocken, PA, pro se.

Albert A. Ciardi, Jr., D. Ethan Jeffery, Ciardi, Fishbone & Di Donato, Philadelphia, PA, for Mitchell W. Miller.

Mitchell W. Miller, Trustee, Miller & Miller, Philadelphia, PA.

Philip A. Yampolsky, Hopkins & Yampolsky, P.C., Joseph J. Marinaro, Hopkins & Yampolsky, P.C., Philadelphia, PA, for Bodek & Rhodes, Inc.

Frederic J. Baker, U.S. Trustee, U.S. Dept. of Justice, Philadelphia, PA.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This is an appeal from a decision of the bankruptcy court which found that certain payments made by the debtor to its landlord within ninety days of the filing of the bankruptcy petition for rents due and owing were not voidable as preferential transfers. For the reasons that follow, the Court will affirm the bankruptcy court's conclusion that the lease extension granted to the debtor in exchange for the payments constituted new value but will reverse the factual determination that the extent of the new value granted to the debtor was equal to or exceeded the amount of the preferential transfers challenged. The matter will be remanded to the bankruptcy court for further proceedings in accordance with this opinion.

### I.

On May 1, 1979, debtor Adelphia Automatic Sprinkler Company entered into a lease with Bodek & Rhodes's predecessor-in-interest for rental of an industrial property located at 225 West Erie Avenue in Philadelphia, Pennsylvania. The rented property was to be used for the operation of a commercial pipe fabricating shop. The lease was subsequently extended three times, with the third lease extension having been given by Bodek

& Rhodes (the "landlord"). This third lease extension agreement distinctly indicated that the lease was to terminate on April 30, 1991.

Prior to the expiration of the third extension, the landlord and the debtor began negotiations for a new lease extension agreement. They agreed that as a condition precedent to the new agreement, all monies past due under the expiring lease, an amount totaling $49,989.81, needed to be paid. The debtor paid the outstanding balance on April 4, 1991 with seven separate checks [1] and a fourth lease extension was signed on April 30, 1991 covering the period of May 1, 1991 to December 31, 1991.

On June 19, 1991, shortly after entering into the new lease agreement, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The case was later converted to a proceeding under Chapter 7 on April 2, 1992, with Mitchell W. Miller being appointed as trustee. The trustee subsequently brought an action against the landlord seeking to retrieve the outstanding balance paid before the signing of the fourth lease extension, claiming that such payments were avoidable preferential transfers.

At trial, the landlord claimed that the past due payments were unavoidable preferential transfers because they were excepted as a contemporaneous exchange for new value, an exchange for subsequent new value, or an exchange made in the ordinary course of business. The bankruptcy court agreed that the payments fell within the contemporaneous exchange for new value exception and that the extent of the new value provided

could be measured by the amount due under the lease extension. Because the unpaid amount due under the extended lease ($51,-309.11) was greater than the amount of the preferential transfers ($49,989.81), the bankruptcy court concluded that none of the transfers could be avoided by the trustee.[2] Judgment was entered in favor of the landlord and the trustee thereafter timely appealed.

## II.

Pursuant to 28 U.S.C. § 158(a), a district court has jurisdiction to review a final bankruptcy court order. When analyzing a bankruptcy court's decision, the bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous." Fed.R.Bank.P. 8013. Conclusions of law, however, are reviewed de novo. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir.1986) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir.1981)). Mixed questions of law and fact, meanwhile, must be broken down to their distinct elements, with the district court "'applying the appropriate standard to each component.'" *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir.1992) (quoting *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989)).

As a preliminary matter, the Court concurs with the bankruptcy court's finding that the payments were preferential transfers, as all requirements for such a conclusion appear to have been met.[3] Despite be-

---

1. The outstanding balance was actually paid with eight checks totalling $53,297.86. At trial, the trustee dropped its preference claim on one check, making $49,989.81 the total preference amount sought to be avoided.

2. Because the bankruptcy court found that the preferential transfers were entirely excepted by virtue of the contemporaneous exchange exception, it did not consider whether the payments were exempted under the other two exceptions argued by the landlord at trial.

3. Section 547 delineates the elements of preferential transfer. That section provides in pertinent part:

   Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
   (A) on or within 90 days before the date of the filing of the petition; or
   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
   (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under chapter 7 of this title;
   (B) the transfer had not been made; and

ing preferential transfers, the bankruptcy court resolved that the payments for amounts past due under the third lease extension were not voidable because they fell within the "contemporaneous exchange" exception found at § 547(c)(1). The section provides:

> (c) The trustee may not void under this section a transfer—
>
>> (1) to the extent that such transfer was
>>
>>> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>>>
>>> (B) in fact a substantially contemporaneous exchange.

11 U.S.C.A. § 547(c)(1) (West 1993). New value is defined in the Bankruptcy Code as:

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C.A. § 547(a)(2) (West 1993).

■ On appeal the trustee argues that the contemporaneous exchange exception relied upon by the bankruptcy court does not apply because the debtor did not receive new value at the time of the exchange. According to the trustee, the granting of the lease extension merely committed the debtor to another eight months of making rental payments in order to remain in premises it already occupied. Consequently, the trustee contends that the lease extension was merely "an obligation substituted for an existing obligation" that did not augment the value of the debtor's estate.[4]

■ The issue for review on appeal is, therefore, whether the landlord's grant of a lease extension in exchange for the past due payments made by the debtor accorded new value to the debtor's estate. This consideration, that is, "[t]he determination of 'new value[,]' is a mixed question of law and fact." *In re Kumar Bavishi & Assocs.,* 906 F.2d 942, 943 (3d Cir.1990) (citing *In re Spada,* 903 F.2d 971, 975 (3d Cir.1990)). Accordingly, the Court must consider first whether new value was given to the debtor as a matter of law in this case and second whether the facts support the bankruptcy court's determination of the amount of new value that was given. The burden of proof lies with the creditor, in this case the landlord, to show both that new value was given to the debtor and the specific value of that consideration. *See In re Spada,* 903 F.2d at 974–77; *In re Jet Florida Sys., Inc.,* 861 F.2d 1555, 1559 (11th Cir.1988).

The Court has no difficulty finding that the lease extension in this case constituted new value. It is clear that the new value given to the debtor resulted in the creation of an entirely new leasehold with the appurtenant

---

> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
>
> 11 U.S.C.A. 547(b) (West 1993).

4. A potential concern exists as to whether the transaction between the parties was "in fact a substantially contemporaneous exchange." 11 U.S.C.A. § 547(c)(1) (West 1993). The debtor delivered the seven checks to the landlord on April 4, 1991. All but one of the checks were subsequently honored the following day, but it was not until April 30, twenty five days later, that the lease extension agreement was signed. *See Barnhill v. Johnson,* 503 U.S. 393, 401–02, 112 S.Ct. 1386, 1391, 118 L.Ed.2d 39 (1992) (stating that transfer of funds by check is effective on the date creditor received check as long as the debtor's bank subsequently honors the check). The Court finds that the "critical inquiry" is whether the debtor and the landlord intended the transaction to be substantially contemporaneous and thus concurs with the bankruptcy court in this respect. *In re Prescott,* 805 F.2d 719, 727 (7th Cir.1986). As was the case at trial, the trustee has not argued on appeal that the exchange was not in fact contemporaneous and the landlord has similarly not addressed the question. Because the Court concludes that the twenty-five day delay was substantially contemporaneous under the circumstances, the preferences will not be found to be avoidable based on the time disparity between the payment of the checks and the signing of the lease extension. *Cf. In re Lyon,* 35 B.R. 759, 762–63 (Bankr.D.Kan.1982) (finding that a twenty day delay between the granting of a loan and the transfer of a mortgage by the debtor in exchange was in fact substantially contemporaneous where the parties intended the exchange to be contemporaneous).

benefit of the debtor being able to remain in the business premises for another eight months. Without this extension, it is undisputed that the debtor would not have been entitled to remain in occupancy of the premises. Though the debtor was required to remit rental payments in exchange for its occupancy, the debtor was nonetheless granted a property right of palpable value which it did not previously possess. Indeed, in this instance, the lease extension can be likened to a loan arrangement, where the full value of the lease (i.e., the right to occupy the premises for an additional eight months) was given to the debtor up front and the landlord was thereafter expecting to be repaid in monthly installments. *Cf. In re Quality Plastics, Inc.*, 41 B.R. 241 (Bankr.W.D.Mich. 1984) ("[A]nalytically, the situation here present is not much different than if [the creditor] had loaned the debtor $16,519.98 to pay subsequently accruing rentals.").

■ Having found the bankruptcy court's legal conclusion to be correct, the Court now turns to the factual element of the new value determination. Specifically, this Court considers the extent of new value actually given and whether the bankruptcy court's finding on this point was clearly erroneous.

■ Section 547(c)(1) protects transfers only up to the extent that the transfer was a contemporaneous exchange for new value. *In re Jet Florida Sys., Inc.*, 861 F.2d at 1559. "[A] party seeking the shelter of section 547(c)(1) must [therefore] prove the specific measure of the new value given the debtor in the exchange transaction he seeks to protect." *In re Spada*, 903 F.2d at 976 (quoting *In re Jet Florida Sys., Inc.*, 861 F.2d at 1558); *see also In re Nucorp Energy, Inc.*, 902 F.2d 729, 733 (9th Cir.1990); *In re Robinson Bros. Drilling, Inc.*, 877 F.2d 32, 34 (10th Cir.1989) (per curiam). "The purpose of this rule is to ensure that the debtor receives at least as much in new value as it transfers away." *In re C.P.P. Export & Import, Inc.*, 132 B.R. 962, 965–66 (D.Kan. 1991). New value does not consist of "esoteric or intangible benefits" but instead "must actually and in real terms enhance the worth of the debtor's estate so as to offset the reduction in the estate that the transfer

caused." *In re Aero–Fastener, Inc.*, 177 B.R. 120, 138 (Bankr.D.Mass.1994).

After trial in this matter, the bankruptcy court found "the unpaid rent due under the fourth lease extension, $51,309.11, [was] a reasonable indicator of value" given to the debtor. (Slip opinion at 9.) The bankruptcy court also concluded that the leasehold's continuation had value in that it averted the need to incur moving and other related expenses. The trustee calls for a reversal of the bankruptcy court because he claims there was no evidence presented at trial linking the unpaid amounts due under the lease or the avoided moving expenses to the value of the lease extension.

The Court agrees. A search of the record discloses no basis for the bankruptcy court's finding that the outstanding amount due under the lease was equal to or greater than the new value given to the debtor at the time of the exchange. Noticeably absent from the record was any indication of the fair market value of the lease extension and the relation of the outstanding amount due to that fair market value. Moreover, despite the bankruptcy court's recognition of the costs of moving and other concomitant expenses that the debtor avoided by staying in place, no proof was offered as to the actual amount of these costs. Any reliance on those items was clearly erroneous in that they were not supported by competent evidence. The Court thus finds that the bankruptcy court committed clear error when it equated the unpaid amount due under the lease to the new value given as it had no evidentiary basis for doing so.

■ With the record failing to support a finding that the new value given to the debtor was greater or equal to the amount of the preference given, the decision of the bankruptcy court is reversed and the matter is remanded for further proceedings. On remand the bankruptcy court is instructed to hear evidence on, *inter alia*, the fair market value of the lease, the costs of entering into a new lease on different premises, and the moving costs avoided by the debtor by remaining in the leased premises. Based on the evidence thus presented, the bankruptcy court shall thereafter make a determination as to the amount of new value given to the debtor as a result of the lease extension.

## III.

For the reasons stated above, the decision of the bankruptcy court shall be affirmed insofar as it establishes that the lease extension given by the landlord constituted new value. The decision is reversed and the matter is remanded, however, for further proceedings in order to establish the dollar amount of the new value given to the debtor as specified in this opinion.